Dale K. ROEHM, Plaintiff,

v.

**CHARTER MOBILE HOME MOVING CO., North Country Homes by Taylor, Inc.; and Redman Homes, Inc., Defendants.**

No. 2:93–CV–42.

United States District Court,
W.D. Michigan,
Northern Division.

Dec. 8, 1993.

---

Evan A. Dixon, Houghton, MI, for Dale K. Roehm plaintiff.

Darrell R. Dettmann, Weber, Swanson & Dettman, Marquette, MI, for Charter Mobile Home Moving Company.

Donn A. Hubbell, Cadillac, MI, for North Country Homes by Taylor, Inc.

David R. Mechlin, Vairo, Mechlin, Tomasi, Johnson & Manchester, Houghton, MI, for Redman Homes Inc.

## OPINION

QUIST, District Judge.

This case arises out of the sale of a mobile home that was allegedly too tall and too wide for legal transport. Plaintiff Dale Roehm brought this diversity action against three defendants. Counts I, II, and III are claims of fraud and breach of warranties against North Country Homes by Taylor, Inc. (North Country) from which plaintiff purchased the mobile home. Count IV and V are claims of fraud and negligence against Charter Mobile Home Moving Co. (Charter) which attempted to move the mobile home. Count VI is a claim against Redman Homes, Inc., the mobile home manufacturer, for fraud and misrepresentation.

Defendants North Country and Charter have filed motions to dismiss for failure to state a claim above the $50,000 jurisdictional limit of this Court in a diversity action. Plaintiff responded with objections to the motions. Neither defendant filed a reply.

## BACKGROUND INFORMATION

Plaintiff purchased the mobile home at issue from North Country in Michigan in May 1987. He alleges that the salesman was aware that plaintiff was in the military service and would need a mobile home that was capable of being transported by the govern-

ment in the event plaintiff was ordered to relocate and that the salesman misrepresented the size of the home plaintiff purchased. In May 1990, Charter undertook to transport the home from Cadillac, Michigan to Suffolk, Virginia. While it was being hauled, the police stopped Charter near Mount Pleasant, Michigan, and, after taking measurements of the mobile home, concluded that it was too tall and too wide for legal transport.

Plaintiff claims that the fact that the mobile home could not be moved caused him substantial expenses including the rent of another home. It allegedly also caused him to default on his payments for the mobile home and resulted in an action by the bank to recoup against plaintiff.

The parties agree that Michigan law applies to this dispute. Michigan is the state where the mobile home was purchased and the attempted move was made.

## ISSUES PRESENTED

Defendants North Country and Charter have moved for dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) on the grounds that the damages are not within the jurisdictional limit required for federal diversity jurisdiction. They argue that the economic loss doctrine limits plaintiff's damages to contract damages and that plaintiff cannot recover noncompensatory damages such as mental anguish. North Country alleges that the value of plaintiff's claim is limited by contract to the sale price of the mobile home, which was $37,640 plus some incidental and consequential damages, and that the total amount falls short of the jurisdictional amount required in diversity actions. Charter claims, with the support of an affidavit and a bill of lading, that the value of the mobile home at the time it was released for transport in 1990 was $20,000. It alleges that plaintiff paid no money to Charter and that his damage claim thus cannot rise to the jurisdictional limit of $50,000.

Plaintiff does not contend that the contract damages he is claiming are in excess of $50,000. Instead, he argues that he should be able to maintain a fraud claim and thereby seek damages for mental anguish in addition to the contract damages. He also maintains

that the economic loss doctrine should not apply in this case to limit his damages because the purchase and attempted transport of the mobile home were consumer transactions.

## DISCUSSION

### The Economic Loss Doctrine

 The Michigan Supreme Court endorsed the economic loss doctrine in 1992. *Neibarger v. Universal Cooperatives, Inc.,* 439 Mich. 512, 486 N.W.2d 612 (1992). The economic loss doctrine "bars tort recovery and limits remedies to those available under the Uniform Commercial Code where a claim for damages arises out of the commercial sale of goods and losses incurred are purely economic." *Id.* at 515, 486 N.W.2d at 613. The *Neibarger* court explained the doctrine as follows:

> The economic loss doctrine, simply stated, provides that where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses. This doctrine hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts.

*Id.* at 520, 489 N.W.2d at 615 (internal quotations and citation omitted).

 Defendants focus on the distinction between damages that arise from the frustration of the purchaser's economic expectation and those that arise from the personal injury of the purchaser or a third party. They point out that, in the instant case, plaintiff does not claim that he or anyone else suffered direct personal injury because the mobile home was larger than he believed. Instead, the mental and emotional distress damages he alleges arose from the breach of contract and, according to defendants, should be barred by the economic loss rule.

Plaintiff argues that the Court should distinguish between "commercial" and "consumer" sales rather than between economic and personal injury. He maintains that since the sale of the mobile home was a sale to a consumer, the economic loss doctrine should not apply.

There is no support in Michigan law for plaintiff's contention that mental anguish damages are available in breach of contract cases when the contract is with a consumer. The Michigan Supreme Court held to the contrary in *Kewin v. Massachusetts Mut. Life Ins. Co.*, 409 Mich. 401, 295 N.W.2d 50 (1980), where the plaintiff was an individual consumer who had entered into a contract for disability income protection insurance. The court held that "absent allegation and proof of tortious conduct existing independent of the breach" noncontractual damages were not recoverable. *Id.* at 420–21, 295 N.W.2d at 55.

An exception to the rule excluding mental distress damages in contract cases was set forth in *Stewart v. Rudner*, 349 Mich. 459, 84 N.W.2d 816 (1957), which allowed damages for mental anguish where a doctor had promised to deliver a baby by Caesarian section, but did not do so and, as a result, the child was stillborn. The *Kewin* court recognized this exception but defined it narrowly to exclude most consumer contracts. *Kewin* described the *Stewart* contract to perform a Caesarean section as "not a commercial contract in which pecuniary interests are most important" and contrasted it with a contract for insurance, which it described as "commercial in nature." 409 Mich. at 416, 295 N.W.2d at 53. Michigan courts have not applied the *Stewart* exception to the sale of homes.

Plaintiff's claims in this case allege damages that arose from breach of contract where pecuniary interests were central. The economic loss doctrine thus applies to bar plaintiff's negligence claim against Charter (Count V). *Neibarger*, 439 Mich. at 529–30, 486 N.W.2d at 619. In addition, it limits plaintiff's damages under its breach of warranty claims against North Country (Counts II, III) to contract damages, which do not rise to the jurisdictional minimum.

### Fraud Claims

■■■■ Plaintiff also contends that his claims for mental and emotional distress are viable because they arise from claims of fraud, which takes the case out of the realm of contract and the limitations of the economic loss doctrine. Even if plaintiff's fraud claims are not limited by the economic loss doctrine,[1] damages for mental anguish are

---

1. Some courts distinguish between fraud in the performance of the contract and fraud in the inducement. In *Williams Elec. Co. v. Honeywell, Inc.*, 772 F.Supp. 1225, 1237 (N.D.Fla.1991), the court explained that "the essence of the 'economic loss' rule is that contract law and tort law are separate and distinct, and that courts should maintain that separation in the allowable remedies. . . . Once the contract has been made, the parties should be governed by it." *Id.* The court then stated: "Fraud in the inducement, however, addresses a situation where the claim is that one party was tricked into contracting. It is based on pre-contractual conduct which is, under law, a recognized tort." *Id.* at 1238. *Accord BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 955 F.2d 1467, 1476 (11th Cir.1992) (under Florida law "there is no bar to tort claims for injury or loss 'outside the scope of the contract between the parties' ").

Other jurisdictions have also recognized fraud as an exception to the economic loss rule. *Dexter Corp. v. Whittaker Corp.*, 926 F.2d 617, 621 (7th Cir.1991) ("If [plaintiff] proves fraud, it can obtain all its compensatory damages and more and can forget about the contract."); *City of*

*Richmond v. Madison Management Group, Inc.*, 918 F.2d 438, 446–47 (4th Cir.1990) (defendants not entitled to protection of economic loss rule where it is alleged they committed fraud); *Rardin v. T & D Mach. Handling, Inc.*, 890 F.2d 24, 29 (7th Cir.1989) (exceptions include "the familiar principle that allows a suit for fraud against a person with whom the plaintiff has a contract"); *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.*, No. 87–1248–C, 1991 WL 177961 *4 (D.Kansas, Aug. 9, 1991) (the fraud exception recognized on reconsideration); *Council of Unit Owners of Sea Colony East, Phases III, IV, VI and VII Condominium v. Carl M. Freeman Associates, Inc.*, Civ. Nos. 86C–AU–49—86C–AU–52, 1990 WL 177632 *5 (Del.Super., Oct. 16, 1990) ("Fraud is a recognized exception to the limitations of the economic loss doctrine").

Under Michigan law, "an action in tort requires a breach of duty separate and distinct from a breach of contract." *Brock v. Consolidated Biomedical Laboratories*, 817 F.2d 24, 25 (6th Cir.1987); *Kewin*, 409 Mich. at 420, 295 N.W.2d at 55. This standard is the same as the economic loss rule under Florida law. As the Court of

limited in fraud claims under Michigan law. Where mental distress damages are claimed in connection with a fraud claim rather than in the tort of intentional infliction of mental distress, they are labeled "exemplary damages" and "are awardable where the defendant commits a voluntary act which inspires feelings of humiliation, outrage, and indignity." *Jackson Printing Co., Inc. v. Mitan,* 169 Mich.App. 334, 341, 425 N.W.2d 791 (1988) (citing *Veselenak v. Smith,* 414 Mich. 567, 572–73, 327 N.W.2d 261 (1982)). Exemplary damages cannot be awarded in a fraud case, however, unless the fraudulent conduct is "malicious or so wilful and wanton as to demonstrate a reckless disregard of the plaintiff's rights." *Id.*

In the instant case, plaintiff has not alleged that he suffered mental anguish from a malicious or wilful and wanton act of any defendant but that he suffered mental distress as a result of breaches of the contracts at issue. In such circumstances, exemplary damages are not available and damages for fraud are limited to the "benefit of the bargain—in other words, what the purchaser would have gotten had the representations been true." *Thompson v. Paasche,* 950 F.2d 306, 314 (6th Cir.1991).

Plaintiff has not asserted, either in his response to the motions to dismiss or in any other document filed with the Court, that his compensatory damages alone, without an amount included for mental distress or attorney's fees, is sufficient to satisfy the jurisdictional amount in any of the claims he asserts. Thus, the case must be dismissed as a matter of law for failure to satisfy the jurisdictional amount required for diversity jurisdiction.

### CONCLUSION

For the reasons stated above, the motions of defendants North Country Motor Homes (docket no. 20) and Charter Mobile Home Moving Company (docket no. 21) for dismissal are GRANTED and the case is DIS-MISSED against all defendants for lack of diversity jurisdiction. An Order consistent with this Opinion will be entered.

Appeals for the Sixth Circuit explained in *Brock,* where a party breaches a contract by acting negligently, the tort is not independent of the existence of the contract and the remedies should be limited to those provided by the contract. 817 F.2d at 25–26. In the instant case, however, plaintiff's claim appears to be that he was in-duced to purchase the motor home in question on the basis of misrepresentations regarding its size and transportability. Thus, he is claiming, like the plaintiff in *Williams,* that he was tricked into contracting. 772 F.Supp. at 1238. Such a claim is "based on pre-contractual conduct which is, under the law, a recognized tort." *Id.*