**Michael and Lavonda MARTIN,
Plaintiffs,**

v.

**A.O. SMITH CORPORATION and A.O.
Smith Harvestore Products, Inc., joint-
ly and severally, Defendants.**

No. 1:94–CV–181.

United States District Court,
W.D. Michigan,
Southern Division.

Jan. 4, 1996.

Opinion Denying Reconsideration
Feb. 1, 1996.

John E. Anding, Christopher G. Hastings, Drew, Cooper & Anding, Grand Rapids, MI, for Michael Martin and Lavonda Martin.

William J. Brennan, Dykema Gossett PLLC, Grand Rapids, MI, David K. Schmitt, Katten, Muchin & Zavis, Chicago, IL, for A.O. Smith Corporation.

William J. Brennan, Dykema Gossett PLLC, Grand Rapids, MI, John M. Sheran, Leonard, Street and Deinard, Minneapolis, MN, for A.O. Smith Harvestore Products, Inc.

## OPINION OF THE COURT

McKEAGUE, District Judge.

This case presents fraud claims under Michigan law and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Now before the Court is defendants' motion for summary judgment, challenging all of plaintiffs' claims.

### I

Plaintiffs Michael and Lavonda Martin are husband and wife. At all pertinent times, they were dairy farmers in Kent County, Michigan. Defendants A.O. Smith Corporation and A.O. Smith Harvestore Products, Inc., are Delaware corporations, the latter being the wholly-owned subsidiary of the former. They manufacture and sell farm equipment and machinery; in particular, the Harvestore feed storage system. Defendants allegedly represented that the Harvestore system was "oxygen-limiting," and would better preserve feed quality and improve herd health. These representations were communicated to the Martins by salesperson contacts, in person and by telephone, and through mailed literature and materials. Plaintiffs allege defendants knew these representations were false when made.

Plaintiffs used Harvestore silos in their farming operations during the 1980's and until 1993, when they discontinued dairy farming. Plaintiffs allege they relied on defendants' knowing misrepresentations about the "oxygen-limiting" capability of the Harvestore system: (1) in their use of Harvestore silos on the farm they leased from Lavonda Martin's father, Irvin Rodgers; (2) in expanding one of the existing Harvestore silos in 1989; and (3) in leasing an additional Harvestore system in 1989. The Harvestore systems allegedly failed to perform as represented and allowed plain-

tiffs' feed to become exposed to oxygen, causing feed spoilage and nutritional deficits in plaintiffs' herd. As a proximate result, plaintiffs allege they experienced depressed milk production, breeding problems, a less fit dairy herd and related economic damages.

In counts I, II and III of their complaint, plaintiffs assert state law tort claims for fraud and conspiracy to commit fraud against both defendants. Count IV contains the RICO claim, asserting that defendants' use of the mails and interstate telephone lines to execute and further their fraudulent representations constitutes a "pattern of racketeering activity," entitling plaintiffs to treble damages and attorneys' fees.

For purposes of their motion for summary judgment, defendants concede that "(1) defendants knowingly misrepresented the oxygen-limiting capabilities of the Harvestore silos, and (2) plaintiffs suffered lost profits including diminished milk production and damages to the herd as a result." Nonetheless, defendants contend they are entitled to judgment as a matter of law because plaintiffs' tort claims are barred by the "economic loss doctrine" and because plaintiffs are unable to demonstrate that defendants' "racketeering activity" proximately caused their losses.

## II

■ Defendants' motion for summary judgment requires the Court to look beyond the pleadings and evaluate the facts to determine whether there is a genuine issue of material fact that warrants a trial. Fed. R.Civ.P. 56(c). See generally Barnhart v. Pickrel, Schaeffer & Ebeling Co., 12 F.3d 1382, 1388–89 (6th Cir.1993). That is, the Court must determine "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ Once the moving party identifies elements of a claim or defense which it believes are not supported by evidence, the nonmovant must present affirmative evidence tending to show a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant. Anderson, supra, 477 U.S. at 248, 106 S.Ct. at 2510. Production of a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. Anderson, 477 U.S. at 252, 106 S.Ct. at 2512. The nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, supra, 475 U.S. at 586, 106 S.Ct. at 1355–56.

■ The substantive law identifies which facts are "material." Facts are material only if establishment thereof might affect the outcome of the lawsuit under governing substantive law. Anderson, 477 U.S. at 248, 106 S.Ct. at 2510. A complete failure of proof concerning an essential element necessarily renders all other facts immaterial. Celotex, supra, 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

## III

■ In Neibarger v. Universal Cooperatives, Inc., 439 Mich. 512, 527–28, 486 N.W.2d 612 (1992), the Michigan Supreme Court expressly adopted the "economic loss doctrine," providing that where a plaintiff seeks to recover for economic loss caused by a defective product purchased for commercial purposes, the exclusive remedy is in contract as provided in the Uniform Commercial Code. That is, under such circumstances, tort remedies are generally not available.

■ Plaintiffs undisputedly seek recovery of economic loss caused by defective silos purchased or leased for commercial purposes. Therefore, defendants contend their tort claims are barred. Plaintiffs contend, notwithstanding the broad language of Neibarger, that the economic loss doctrine should not be construed so broadly as to preclude intentional tort claims like fraud.

Plaintiffs' argument has logical appeal, but their position remains without support in the published case law. In the interest of maintaining predictability in commercial transactions, the courts have been reluctant to recognize exceptions to the general rule of *Neibarger*.

■ In *Huron Tool & Engineering Co. v. Precision Consulting Services, Inc.*, 209 Mich.App. 365, 532 N.W.2d 541 (1995), the Michigan Court of Appeals recognized an exception for a claim of fraud in the inducement or fraud extraneous to the contract. The exception applies only where the alleged misrepresentations do not concern the quality or character of the goods that are the subject of the parties' contractual agreement. *Id.*, at 373, 532 N.W.2d 541. Here, all of the alleged misrepresentations concern the quality or character of the Harvestore silos and could freely have been made part of the parties' contract negotiations. The present allegations do not make out claims for fraud in the inducement as the term is defined in *Huron Tool*.

Similarly unavailing is plaintiffs reliance on *Theuerkauf v. United Vaccines*, 821 F.Supp. 1238, 1242, n. 1 (W.D.Mich.1992), and *Roehm v. Charter Mobile Home Moving Co.*, 907 F.Supp. 1110, 1114 n. 1 (W.D.Mich.1993). In both cases, which predate *Huron Tool*, the Honorable Gordon J. Quist observed in dicta that claims for fraud in the inducement may avoid the bar of the economic loss doctrine. In both cases, Judge Quist relied on *Williams Electric Co., Inc. v. Honeywell, Inc.*, 772 F.Supp. 1225 (N.D.Fla.1991), and thereby identified fraud in the inducement as pre-contractual misrepresentations concerning matters extraneous to the contract whereby the plaintiff was tricked into contracting.[1] Here, the alleged misrepresentations were intrinsic to the quality and performance of the Harvestore silos and did not concern extraneous matters. They do not make out claims for fraud in the inducement as the term is defined in *Theuerkauf* or *Roehm*.

In *Begola Services, Inc. v. Wild Brothers*, 210 Mich.App. 636, 639–40, 534 N.W.2d 217

(1995), yet another definition was employed. "Fraud in the inducement occurs where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon." This definition does not help plaintiffs, inasmuch as defendants' misrepresentations concerned the existing qualities and capabilities of the Harvestore system, not future conduct.

The Court thus concludes that plaintiffs have failed both to allege and adduce facts in support of the fraud in the inducement exception. This conclusion is consistent with the Honorable Benjamin F. Gibson's recent partial summary judgment ruling in *Valleyside Dairy Farms, Inc. v. A.O. Smith Corp.*, W.D.Mich. No. 1:94–CV–53, opinion dated October 26, 1995, finding the fraud in the inducement exception not applicable under similar facts. See also *Snyder v. Boston Whaler, Inc.*, 892 F.Supp. 955, 960–61 (W.D.Mich.1994) (tort claims based on misrepresentations that are "promises contractual in nature" barred by economic loss doctrine). It is also consistent with guidance from the Sixth Circuit, advising broad application of *Neibarger* and Michigan's economic loss doctrine where economic losses are at issue between commercial entities. See *Detroit Edison Co. v. NABCO, Inc.*, 35 F.3d 236, 242 (6th Cir.1994); *Bailey Farms, Inc. v. NOR–AM Chemical Co.*, 27 F.3d 188, 191–92 (6th Cir.1994). Finally, it is consistent with the result reached in *Cameron v. American Dental Technologies, Inc.*, 1995 WL 599871 (E.D.Mich.1995), where the court held, notwithstanding *Huron Tool* and *Theuerkauf*, that *Neibarger* does not even allow for a fraud in the inducement exception. Plaintiffs have failed to persuade that the Michigan Supreme Court, if faced with the instant fraud claims, would reach a conclusion different from that counseled by the foregoing authorities.

Plaintiffs having failed to demonstrate the existence of a genuine fact issue on their fraud in the inducement theory, the Court finds there is no genuine issue as to any

---

1. This definition is not unlike that employed in *Huron Tool*. Indeed, the Michigan Court of Appeals recognized in *Huron Tool* that *Williams* *Electric* is consistent with its own formulation of the fraud in the inducement exception.

material fact and that the economic loss doctrine bars plaintiffs' fraud claims. Defendants are entitled to summary judgment on the claims asserted in counts I, II and III of the complaint.

## IV

Defendants also challenge plaintiffs' RICO claim. They contend they cannot be found liable for a RICO violation unless plaintiffs' injuries were "proximately" or "directly" caused by the alleged mail fraud or wire fraud activities. While admitting that misrepresentations were communicated to plaintiffs and that they suffered losses as a result, defendants maintain that the misrepresentations conveyed by the mails or telephone lines cannot, as a matter of law, be deemed to have proximately caused plaintiffs' injuries because there were other contributing causes.

■ Defendants' argument stems from the Supreme Court's ruling in *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). *Holmes* holds that standing to prosecute a civil RICO action under 18 U.S.C. § 1964(c) requires injury "directly" or "proximately" caused by the alleged predicate racketeering activity. *Id.*, at 269, 112 S.Ct. at 1318. That is, the injury must have been not only "factually," but also "legally," caused by the alleged predicate activity. The notion of proximate causation reflects "ideas of what justice demands, or of what is administratively possible and convenient." *Id.*, quoting W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on Law of Torts, 5th ed., § 41, p. 264.

■ Proximate causation for purposes of RICO is to be determined with reference to the same principles that apply to tort claims generally. *Kaufman v. BDO Seidman*, 984 F.2d 182, 185 (6th Cir.1993); *Brandenburg v. Seidel*, 859 F.2d 1179, 1189 (4th Cir.1988). "Proximate cause" is not equivalent to "sole cause." *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1399 (11th Cir.1994), *modified*, 30 F.3d 1347 (11th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 900, 130 L.Ed.2d 784 (1995). "A factor is a proximate cause if it is 'a substantial factor in the sequence of responsible causation.'" *Id.*, quoting *Hecht v. Commerce*

*Clearing House, Inc.*, 897 F.2d 21, 23–24 (2nd Cir.1990). If a defendant's conduct was a substantial factor in causing the plaintiff's injury, the defendant will not be absolved from liability merely because other causes contributed to the injury. *Cox, supra.* However, the defendant's misconduct will not be deemed a proximate cause of injury if other factors are an intervening direct cause. *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2nd Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 728, 130 L.Ed.2d 632 (1995). Many considerations enter into the proximate cause inquiry, including the foreseeability of injury, the intervention of other independent causes, the factual directness of the causal connection, and the ability to ascertain and apportion damages among contributing causes. *Id.*, at 769–70.

Defendants focus on the last of these considerations, arguing that many factors contributed to plaintiffs' injury and that apportionment of damages among contributing causes will present unworkable difficulties. The Court remains unpersuaded.

■ The issue arises now in the context of defendants' motion for summary judgment. Defendants have pointed out an absence of evidence to support a finding of proximate causation, and plaintiffs have responded with, among other things, Michael Martin's affidavit. He states that he read defendants' Harvestore Farmer Magazine and other farming magazines delivered to the farm with great interest; that he read the Harvestore advertisements contained therein; and that he relied on the false representations concerning the Harvestore system's oxygen-limiting capabilities in deciding to store more and better hay in the Harvestore silos than his father-in-law had, and in deciding to expand one system and lease another. The affidavit is not refuted. When it is considered in light of defendants' admissions that they knowingly misrepresented the oxygen-limiting capabilities and that plaintiffs were injured as a result, the Court can hardly find, on the present record, that there is no genuine issue concerning proximate causation.

Defendants point to Michael Martin's deposition testimony, acknowledging that milk production and herd health and reproduction may be adversely affected by numerous factors. Yet, if defendants' misrepresentations were a substantial factor, the mere fact that other factors contributed to cause plaintiffs' injury does not absolve defendants of liability. *Cox,* 17 F.3d at 1399. It is in this respect that the present record is materially distinguishable from the cases cited by defendants, where independent direct causes intervened to cause injury. See *Powers v. British Vita, P.L.C.,* 57 F.3d 176, 189 (2nd Cir.1995); *Mendelovitz v. Vosicky,* 40 F.3d 182, 185 (7th Cir.1994); *Imagineering, Inc. v. Kiewit Pacific Co.,* 976 F.2d 1303, 1312 (9th Cir.1992); *Lui Ciro, Inc. v. Ciro, Inc.,* 895 F.Supp. 1365, 1379 (D.Hawaii 1995). Defendants have failed to demonstrate that any of the other factors was an independent intervening direct cause breaking the admitted chain of causation running from their own misrepresentations, to plaintiffs' reliance, to oxygen-exposure, to feed spoilage, to compromised herd health, to economic loss.

Defendants have also failed to show that it will be impossible or unworkably difficult to ascertain the extent to which the Harvestore systems, used by plaintiffs in reliance upon their purported oxygen-limiting capabilities, contributed to plaintiffs' injury by causing or allowing feed spoilage. While anticipated difficulties of proof are unquestionably a legitimate concern, see *Holmes,* 503 U.S. at 268–272, 112 S.Ct. at 1318–20; *Imagineering, supra,* 976 F.2d at 1312, defendants have failed to show that they are so unavoidable or insurmountable as to warrant summary judgment in their favor at this time.

Moreover, a factor weighing heavily in favor of finding at least a question of fact concerning proximate causation is the foreseeability of harm. Defendants admit they knowingly misrepresented the oxygen-limiting capabilities. It was unquestionably foreseeable that farmers would purchase, lease and use Harvestore silos in reliance upon the misrepresentations, with naturally occurring injurious results to livestock health. On the present record, defendants' knowing and continuous affirmative misrepresentations appear to represent "so significant and important a cause that the defendant[s] should be held responsible." *Brandenburg, supra,* 859 F.2d at 1189, quoting Prosser and Keeton on Law of Torts, 5th ed., § 42, p. 272. A question of fact remains as to whether defendants' admitted conduct constitutes a proximate cause of injury for which "justice demands" that they be held accountable. See *Holmes,* at 268, 112 S.Ct. at 1318.

Defendants ask the Court to narrow the time period for which they may be deemed liable under RICO. Prior to 1989, they contend, all misrepresentations conveyed by mail were addressed to Irvin Rodgers, not to plaintiffs. Plaintiffs' pre-1989 damages are said to be contingent upon Rodgers' independent intervening decision to lease his Harvestore systems to plaintiffs.

The argument would have merit if plaintiffs had alleged that Rodgers increased their rent as a consequence of losses he had experienced in reliance upon defendants' mailed misrepresentations. *Cf. Pillsbury, Madison & Sutro v. Lerner,* 31 F.3d 924, 929 (9th Cir.1994). Here, however, the Rodgers lease is in no way an intervening cause of injury to plaintiffs. Though the mailed misrepresentations were mailed to Rodgers, they were received, read and relied upon by plaintiffs. There is no evidence that Rodgers subsequently took any action that intervened to directly cause plaintiffs' injury, thereby absolving defendants of responsibility for the consequences of their misrepresentations.

Accordingly, there being questions of fact concerning proximate causation, defendants' motion for summary judgment on plaintiffs' RICO claim will be denied.

A partial judgment order consistent with this opinion shall issue forthwith.

## MEMORANDUM OPINION AND ORDER DENYING MOTIONS FOR RECONSIDERATION

On January 4, 1996, the Court issued an opinion and order granting defendants' motion for summary judgment in part and denying it in part. Plaintiffs now move the Court to reconsider its ruling that the economic loss doctrine bars their state law fraud claims. Specifically, plaintiffs ask the Court to an-

swer two questions: "(1) whether plaintiffs' fraud claim is saved despite the economic loss doctrine because of defendants' fraudulent concealment of plaintiffs' cause of action; and (2) whether the economic loss doctrine can possibly apply to defendant A.O. Smith in light of the fact that plaintiffs had no relationship with A.O. Smith which is touched in any fashion by the Uniform Commercial Code."

Neither issue was addressed in the Court's ruling because neither issue was properly and timely raised. Neither issue was raised in plaintiff's original brief in opposition to defendants' motion for summary judgment. Plaintiffs contend the issues were raised in their supplemental brief.

After oral arguments on defendants' motion for summary judgment were heard and the motion was taken under advisement, both plaintiffs and defendants sought leave to file supplemental briefs. Both sides wished thereby to advise the Court of the recent ruling by Judge Benjamin F. Gibson in *Valleyside Dairy Farms, Inc. v. A.O. Smith Corp.*, W.D.Mich. No. 1:94–CV–53, opinion dated October 26, 1995, dealing with issues similar to those presented in this case. Both sides also wished to advise the Court of the arguments subsequently addressed to Judge Gibson in support of their respective motions for reconsideration of his ruling. The Court allowed the supplemental briefing.

Plaintiffs responded simply with a copy of the brief filed in support of their motion for reconsideration in the *Valleyside* case. Plaintiffs offered no explanation as to how their *Valleyside* arguments should be applied to the pending issues in this case. Therefore, not unreasonably, the Court considered the *Valleyside* brief only insofar as it supported plaintiffs' positions on issues previously raised by them in this case.

In their original brief in opposition to defendants' motion for summary judgment, plaintiffs had asked the Court to except their fraud claims from the reach of the economic loss doctrine because they had alleged intentional torts and fraud in the inducement. Plaintiffs had not and still have not properly argued that they have stated a fraud claim under the Uniform Commercial Code with respect to which the period of limitations was tolled due to defendants' fraudulent concealment of their cause of action. Nor had plaintiffs argued that A.O. Smith Corporation stands on different footing than A.O. Smith Harvestore Products, Inc., vis-a-vis the economic loss doctrine. In other words, plaintiffs assert in their motion for reconsideration new arguments that were not timely briefed and which neither defendants nor the Court were properly asked to address.

 Plaintiffs' motion for reconsideration is properly treated as a motion to alter or amend judgment under Fed.R.Civ.P. 59(e). *McDowell v. Dynamics Corp. Of America*, 931 F.2d 380, 382 (6th Cir.1991); *Huff v. Metropolitan Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir.1982). The motion is entrusted to the Court's informed discretion. *Id.* A judgment may generally be altered or amended for one of three reasons: (1) because of an intervening change of controlling law; (2) because evidence not previously available has become available; or (3) because necessary to correct a clear error of law or prevent manifest injustice. *Keweenaw Bay Indian Community v. State of Michigan*, 152 F.R.D. 562, 563 (W.D.Mich. 1992). See also *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 90–91, n. 3 (1st Cir.1993); *Torre v. Federated Mutual Ins. Co.*, 862 F.Supp. 299, 300–01 (D.Kan.1994); *Pacific Group v. First State Ins. Co.*, 841 F.Supp. 922, 931 (N.D.Cal.1993).

██ Plaintiffs must rely on the last of these three reasons. They have not presented newly discovered evidence or a recent change in controlling law. Yet, plaintiffs' suggestion that a manifest injustice will result unless the Court now addresses arguments which they neglected to timely raise is not compelling. First of all, a motion to alter or amend judgment is not appropriately used to advance arguments or theories that could and should have been raised prior to the Court's ruling. *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir.1995); *Torre, supra,* 862 F.Supp. at 301.

Secondly, the Court remains unpersuaded that consideration of the merits of plaintiffs' new arguments would change the result. Plaintiffs' first argument is flawed because they have not stated a fraud claim which avoids the economic loss doctrine and is cog-

nizable under the Uniform Commercial Code. Only if they had would the statute of limitations and their fraudulent concealment argument come into play. Further, plaintiffs have not adduced and identified evidence sufficient to create a genuine fact issue in support of their assertion that defendants took affirmative actions to fraudulently conceal the existence of plaintiffs' cause of action.

Plaintiffs' second argument, that defendant A.O. Smith Corporation should not be deemed protected by the economic loss doctrine, also lacks merit. As the Court observed in its partial judgment ruling, the economic loss doctrine recognized in *Neibarger v. Universal Cooperatives, Inc.,* 439 Mich. 512, 486 N.W.2d 612 (1992), has been broadly construed and applied. It applies to bar tort remedies for economic loss caused by a defective product purchased for commercial purposes even in the absence of contractual privity between the parties.

The Court's partial judgment ruling contains no clear error of law and has not resulted in manifest injustice. The Court remains unpersuaded that it should be altered or amended in any way. Accordingly, for all the foregoing reasons, plaintiffs' motion for reconsideration is **DENIED.**

**IT IS SO ORDERED.**