**BAILEY FARMS, INC., a Michigan corporation, Plaintiff–Appellant, Cross–Appellee,**

v.

**NOR–AM CHEMICAL COMPANY, Defendant–Appellee, Cross–Appellant.**

**Nos. 92–2402, 92–2403.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 7, 1993.

Decided Jan. 12, 1994.*

* This decision was originally issued as an "unpublished decision" filed on January 12, 1994. On

June 6, 1994, the court designated the opinion as one recommended for full-text publication.

190

Joel M. Boyden (argued and briefed), Boyden, Waddell & Timmons, Grand Rapids, MI, for plaintiff-appellant, cross-appellee.

Scott L. Gorland (argued and briefed) and Wallace R. Haley, Pepper, Hamilton & Scheetz, Detroit, MI, for defendant-appellee, cross-appellant.

Before: RYAN and SUHRHEINRICH, Circuit Judges; and LIVELY, Senior Circuit Judge.

SUHRHEINRICH, Circuit Judge.

In this diversity action, plaintiff Bailey Farms, Inc., appeals the district court's dismissal of its negligence and breach of warranty claims against defendant NOR–AM Chemical Company. Defendant NOR–AM cross-appeals the district court's rulings that plaintiff's negligence claim was not preempted by the Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C.A. §§ 136–136y (1980 & Supp.1993) ("FIFRA"); and that plaintiff presented adequate proof to withstand summary judgment on the issue of causation.

For the reasons that follow, we **AFFIRM**.

## I.

Plaintiff is a Michigan commercial farming corporation. Its sole shareholder and president is Howard Bailey. Defendant is a Delaware corporation. In 1989, plaintiff attempted for the first time to grow seedless watermelons in Michigan. Plaintiff purchased from defendant a soil fumigant, Vorlex, used for weed control. Plaintiff alleges that defendant, through its sales representative, misinformed him as to the proper use of the

chemical, and that this improper use destroyed the 1989 crop.

Plaintiff brought suit in state court in May 1990, alleging negligence in advising about the proper use of Vorlex, and breach of warranty, and seeking incidental and consequential damages. Defendants removed the action, and later filed a motion for judgment on the pleadings or in the alternative, for summary judgment, raising three issues: (1) plaintiff's claims are preempted by FIFRA; (2) defendant had a valid disclaimer of all commercial warranties; and (3) plaintiff's complaint failed to state a valid claim for breach of warranty of fitness for a particular purpose. On October 1, 1991, the district court (Judge Enslen), ruled that plaintiff's claims were not preempted by FIFRA, that plaintiff had failed to create a genuine issue of fact as to defendant's assertion of a valid, enforceable disclaimer of warranties, and that plaintiff's negligence claim stated a question for a jury.

On August 13, 1992, defendant filed another motion to dismiss and/or for summary judgment, based upon the Michigan Supreme Court's recently issued decision in *Neibarger v. Universal Coops., Inc.,* 439 Mich. 512, 486 N.W.2d 612 (1992). *Neibarger* holds that a plaintiff may not recover in tort for economic loss caused by a defective product purchased for commercial purposes. In response, plaintiff argued that its claim was based on the tort of negligent misrepresentation, not on liability for a defective product; and that the transaction between the parties was for services and not goods, and therefore was not controlled by the Uniform Commercial Code as adopted by Michigan. On September 30, 1992, the lower court (Magistrate Judge Rowland)[1] ruled that: (1) the "overall thrust" of the dealings between the parties was to purchase goods; and (2) although *Neibarger* was not precisely on point, plaintiff's negligent misrepresentation claim implicated the policies underlying the economic loss doctrine, thereby warranting the conclusion that the *Neibarger* doctrine barred

1. On May 5, 1992, both parties consented to proceed before the magistrate judge for all further proceedings. *See* 28 U.S.C. § 636(c)(1).

plaintiff's claim. These timely appeals followed.

## II.

■ Because jurisdiction in this case is based upon diversity of citizenship of the parties, we apply state law in accordance with the then controlling decision of the highest state court. *Monette v. AM–7–7 Baking Co., Ltd.*, 929 F.2d 276, 280 (6th Cir.1991). To the extent that the state supreme court has not yet addressed the issue presented, it is our duty to anticipate how that court would rule. *Mahne v. Ford Motor Co.*, 900 F.2d 83, 87 (6th Cir.), *cert. denied*, 498 U.S. 941, 111 S.Ct. 349, 112 L.Ed.2d 313 (1990).

## III.

### A.

Plaintiff presents six subarguments in connection with its primary argument that its tort claim of negligent misrepresentation is not barred by the economic loss doctrine. We deal with each in turn.

### 1.

■ First, plaintiff argues that *Neibarger* does not apply because the economic loss doctrine, as defined by the *Neibarger* court, extends only to damages caused by *defective products;* and that plaintiff is not complaining that the product, Vorlex, worked improperly, but rather that he was negligently misinformed as to its proper use, resulting in the destruction of his crops. Plaintiff forgets that such a distinction was rejected in *Neibarger:*

> [P]laintiffs' attempts to avoid the application of the UCC by arguing that there was no defect in the product, but that it was poorly designed or installed, are to no avail. At the heart of the complaints in these cases is the fact that the plaintiffs purchased products which proved inadequate for their purposes, causing them lost profits, and perhaps, consequential losses or property damages compensable in a

> timely suit under the provisions of the UCC.

439 Mich. 512, 486 N.W.2d at 622–23.

Although the watermelon crops at issue in this case also are technically "other property" than the purchased product, a successful crop was part of the commercial expectations for the fumigant, and the loss of that crop allegedly the result of a defect of the use of the purchased product. Similarly, at the heart of plaintiff's complaint is that the weed suppressant, through improper applications, proved inadequate and caused plaintiff consequential losses. We therefore reject this claim for the reasons stated in *Neibarger.*

### 2.

■ Next, plaintiff claims that *Neibarger* does not preclude a tort cause of action for misrepresentation. Defendant maintains that Michigan does not recognize the tort of negligent misrepresentation between commercial parties, and that decisions from other jurisdictions mandate that a negligent misrepresentation claim may only be asserted against a defendant in the business of supplying information.

Assuming, as did the district court, that the Michigan Supreme Court would not limit the tort of negligent misrepresentation to those defendants who are in the business of supplying information, we likewise agree with the lower court's prediction that the court would hold that the principles and rationale set forth in *Neibarger* bar any recovery for economic losses based upon the tort of negligent misrepresentation. We further agree with defendant that the claim nonetheless fails under Michigan law, which holds that an action in tort requires a breach of duty separate and distinct from a breach of contract. *Brock v. Consolidated Biomedical Lab.*, 817 F.2d 24, 25 (6th Cir.1987) (applying Michigan law to hold that Michigan law does not recognize a cause of action for negligent performance of a contract). We think equally true here that the "operative allegations in the claims would not arise without the existence of the putative contracts between the parties[,] [and that] [s]uch allegations therefore cannot be maintained as tort-based claims." *Merchants Publishing Co. v. Maru-*

*ka Mach. Corp. of America,* 800 F.Supp. 1490, 1493 (W.D.Mich.1992) (actions for fraud, negligent misrepresentation and re-scission of contract action with sale of faulty printing press cannot be maintained in tort under Michigan law because claims derive existence out of contracts between the par-ties). Finally, we note that the UCC con-tains a specific remedy for misrepresentation or fraud. *See* Mich. Comp. Laws Ann. § 440.2721 (West 1967).

### 3.

■ Third, plaintiff asserts that because NOR–AM's misrepresentations were not made until after the sale of goods was com-pleted, the UCC does not apply. This con-tention is without merit. Pursuant to plain-tiff's own admissions, advice and instruction were an expected aspect of the purchase of Vorlex, a basis of the commercial expecta-tions of the parties, and clearly incidental to the sale. Furthermore, the UCC itself makes available remedies for defective prod-ucts even after acceptance. *See, e.g.,* Mich. Comp. Laws Ann. § 440.2607 (West 1967).

### 4.

■ Fourth, plaintiff argues that its claims fall within tort policies, not contract principles, such that the economic loss doc-trine should not apply. We disagree. Just as in *Neibarger,* the damages in this case were purely economic and consequential, and there was no accident or physical injury. Furthermore, plaintiff has a remedy for al-legedly negligent representations by the sell-er pursuant to the warranty provisions of the UCC. *See* Mich. Comp. Laws Ann. § 440.-2313 (West 1967 & Supp.1993) (express war-ranties); *and* Mich. Comp. Laws Ann. §§ 440.2314, 440.2315 (West 1967) (implied warranties of merchantability and/or fitness for a particular purpose).

### 5.

■ Fifth, plaintiff claims that services, rather than goods, were the predominant reason that plaintiff purchased Vorlex and that the UCC and the economic loss doctrine therefore do not apply. We agree with the district court's assessment that the overall thrust of the dealings between the parties was to purchase goods. As pointed out by the district court, the cost of Vorlex, $8,251.65, made up most of the total invoice amount of $8,591.65. Bailey, in his deposi-tion testimony, stated that he was looking primarily for an effective weed control when he purchased the Vorlex. Thus, under the test set forth in *Neibarger,* we conclude that the predominant factor of the parties' agree-ment was a transaction of sale, with labor incidentally involved. *Neibarger,* 439 Mich. 512, 486 N.W.2d at 621 (adopting and apply-ing *Bonebrake v. Cox,* 499 F.2d 951, 960 (8th Cir.1974)).

### 6.

■ Plaintiff also contends that the de-struction of its seedless watermelon crop amounts to a "disaster" and not a mere "disappointment." In *Citizens Ins. Co. of America v. Proctor & Schwartz, Inc.,* 802 F.Supp. 133 (W.D.Mich.1992), the court carved out a distinction it perceived was also recognized in *Neibarger,* that where econom-ic loss is a "natural foreseeable result of product's defects," the "disappointed" com-mercial buyer is limited to contract remedies. However, where the defect results in a "sud-den calamitous event" causing damage to other property, a "disaster," remediable in tort has occurred. *Citizens,* 802 F.Supp. at 140.

Assuming the validity of this distinction, we agree with the lower court that the loss was foreseeable and therefore more accu-rately characterized as a commercial disap-pointment than as an unforeseeable disaster for the simple reason that Bailey admittedly knew that Vorlex could kill the plants if the soil did not properly aerate. We therefore reject this argument.

### B.

Plaintiff also appeals the district court's ruling that NOR–AM's disclaimer of warran-ties precluded plaintiff's breach of warranty

claim.[2] Plaintiff presents three specific points of error.

### 1.

First, plaintiff claims that the disclaimer is not effective with respect to an implied warranty in tort claim. Plaintiff's argument fails for the reasons discussed above with respect to *Neibarger.* The cases relied on by plaintiff, *Citizens,* 802 F.Supp. at 133, and *Blanchard v. Monical Mach. Co.,* 84 Mich.App. 279, 269 N.W.2d 564 (1978) are distinguishable in that the claims in those cases were viable in tort. In *Citizens* the court disallowed recovery with respect to tort claims for losses resultant from damage to a peanut roaster and conveyer cleaner, but also held that the economic loss doctrine did not bar Citizens' tort claims for losses resultant from unanticipated, "disastrous" fire damage to other property. In *Blanchard,* recovery in tort was permitted where an employee was injured by a machine sold in an "as is" condition. In any event, the disclaimer here stated expressly that no agent of NOR–AM was authorized to make any warranties beyond those contained on the label. This argument is rejected.

### 2.

Second, referring to the above-quoted paragraph, plaintiff argues that because the Vorlex label contained no warranties to be disclaimed, the label is deceptive and confusing in that it "promises a warranty and then offers none." As pointed out by defendant, this argument is incorrect in that plaintiff received the Vorlex label and product information bulletin prior to purchase of Vorlex and could have relied on information therein which could serve as a basis for an express warranty. Secondly, both the UCC and common law allow defendant to disclaim implied warranties.

### 3.

Lastly, plaintiff contends that the disclaimer is unconscionable and should not be enforced. *See* Mich. Comp. Laws Ann. § 440.2302. Specifically, plaintiff claims that the disclaimer is one-sided and oppressive. However, plaintiff's admitted failure to read the Vorlex labeling, when he knew that he was required to do so by law, undercuts his claim that he had no bargaining power with respect to the disclaimer provision. In addition, the record reflects that plaintiff is not as inexperienced as he might suggest. He had been farming for over seventeen years, had over 1000 acres under cultivation at the time of the transaction, had performed custom farming for others in Florida, and most importantly, had prior experience with pesticides. We are not persuaded.

### IV.

Because we are affirming the lower court as to both assignments of error raised by plaintiff, we need not address NOR–AM's cross-appeal.

For all the foregoing reasons, then, the judgment of the district court is **AFFIRMED.**

---

**2.** That provision reads as follows:

**DISCLAIMER OF WARRANTIES:** THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE OR OTHERWISE, WHICH EXTEND BEYOND THE STATEMENTS MADE ON THIS LABEL. No agent of NOR–AM Chemical Company is authorized to make any warranties beyond those contained herein or to modify the warranties contained herein. UNDER NO CIRCUMSTANCES SHALL NOR–AM CHEMICAL COMPANY BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM FAILURE TO USE THIS PRODUCT IN ACCORDANCE WITH LABEL DIRECTIONS.