**LAKE & PIEPKOW FARMS, a Michigan corporation, Plaintiff,**

v.

**PURINA MILLS, INC., a Delaware corporation, Defendant.**

**No. 1:96–CV–325.**

United States District Court,
W.D. Michigan,
Southern Division.

Feb. 24, 1997.

Randall S. Miller, Lopatin, Miller, Freedman, Bluestone, Herskovic, Heilmann & Domol PC, Southfield, MI, for Lake & Piepkow Farms.

James B. Doezema, Tolley, Vandenbosch & Walton, PC, Grand Rapids, MI, for Purina Mills, Inc.

## OPINION

QUIST, District Judge.

Plaintiff, Lake & Piepkow Farms, filed a complaint against Defendant, Purina Mills, Inc., alleging that Defendant supplied Plaintiff with livestock feed that contained too much urea, injuring Plaintiff's dairy cattle. Plaintiff claims that, as a result, its dairy farming business suffered economic damages. This matter is before the Court on Defendant's motion for partial dismissal, or, in the alternative, for partial summary judgment.

Defendant asserts that the contract for the sale of livestock feed to Plaintiff was a contract for the sale of goods governed by the Uniform Commercial Code. Defendant further asserts that the economic loss doctrine limits Plaintiff's recovery to remedies available under the Uniform Commercial Code. Thus, Defendant requests the Court to dismiss Count I (negligence), Count III (innocent misrepresentation), and Count IV (breach of contract) of Plaintiff's Complaint. Plaintiff responds by asserting that the economic loss doctrine does not apply because: 1) services were the predominant function of the contract, and 2) the damages that Plaintiff suffered were to property other than the product sold.

## Facts

Plaintiff, a Michigan corporation, operates a dairy farming business in the City of Ovid in Calhoun County, Michigan. Defendant, a Delaware corporation licensed to do business in Michigan, designs, manufactures, and sells livestock feed products.

Plaintiff has been purchasing feed from Defendant for over thirty years for use in its dairy farming business. In late 1993, Defendant created a custom blend of feed for Plaintiff based on the production level, body condition, and general health of Plaintiff's herd of dairy cattle. From approximately February 1994 to November 1994, Plaintiff claims that Defendant increased the use of urea in the feed.[1] As a result, Plaintiff claims that its dairy cattle sustained health problems including sterility, lower rate of heats, breeding difficulties, and death. Plaintiff also alleges that it sustained economic damage including reduced milk production, excessive veterinary expenses, and reduction in the genetic potential of the dairy cattle.

---

1. "Urea" is defined as "a water-soluble powder form of [a compound occurring in urine and other body fluids as a product of protein metabolism], obtained by the reaction of liquid ammonia and liquid carbon dioxide: used as a fertilizer, animal feed, in the synthesis of plastics, resins, and barbiturates, and in medicine as a diuretic and in the diagnosis of kidney function." The Random House Dictionary of the English Language 2095 (2d ed. 1987).

## Discussion

### 1. Legal Standard

If a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure includes materials outside the pleadings that are presented to the court, then the motion shall be treated as a summary judgment motion as provided in Rule 56 of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 12(b). In the case at hand, the Court has taken into consideration the parties' briefs and other materials presented by the parties, in addition to the pleadings. Therefore, this case will be treated as a motion for partial summary judgment.

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. The rule requires that the disputed facts be material. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute over trivial facts which are not necessary in order to apply the substantive law does not prevent the granting of a motion for summary judgment. *Id.* at 248, 106 S.Ct. at 2510. The rule also requires the dispute to be genuine. A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.* This standard requires the non-moving party to present more than a scintilla of evidence to defeat the motion. *Id.* at 251, 106 S.Ct. at 2511 (citing *Improvement Co. v. Munson*, 14 Wall. 442, 448, 20 L.Ed. 867 (1872)). The summary judgment standard mirrors the standard for a directed verdict. *Id.* at 250, 106 S.Ct. at 2511. The only difference between the two is procedural. *Id.* Summary judgment is made based on documentary evidence before trial, and directed verdict is made based on evidence submitted at trial. *Id.*

A moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the motion is so supported, the party opposing the motion must then demonstrate with "concrete evidence" that there is a genuine issue of material fact for trial. *Id.; Frank v. D'Ambrosi*, 4 F.3d 1378, 1384 (6th Cir.1993). The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Elec. Indus. Court., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

### 2. Economic Loss Doctrine

■ The economic loss doctrine "bars tort recovery and limits remedies to those available under the Uniform Commercial Code where a claim for damages arises out of the commercial sale of goods and losses incurred are purely economic." *Neibarger v. Universal Coops.*, 439 Mich. 512, 515, 486 N.W.2d 612, 613 (1992). The Michigan Supreme Court in *Neibarger* held that "where a plaintiff seeks to recover for economic loss caused by a defective product purchased for commercial purposes, the exclusive remedy is provided by the UCC." *Id.* at 527–28, 439 N.W.2d at 618.

#### a. Predominant Factor Test

■ Plaintiff asserts that, in the instant case, the economic loss doctrine is not applicable because the contract was for the sale of services, not goods. In *Neibarger*, the plaintiffs claimed that the defendants' milking equipment had been improperly designed and installed, resulting in the illness or death of their dairy cattle. In deciding whether the contract was for the sale of goods or services, the court adopted the test set forth in *Bonebrake v. Cox*, 499 F.2d 951 (8th Cir. 1974), stating:

The test for inclusion or exclusion is not whether they are mixed, but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved ... or is a

transaction of sale, with labor incidentally involved. . . .

*Neibarger,* 439 Mich. at 534, 486 N.W.2d at 621 (quoting *Bonebrake,* 499 F.2d at 960). The court found that "the thrust or purpose of the plaintiffs' contracts with the defendants was not the provision of defendants' design or installation services; rather, the plaintiffs intended to acquire goods, i.e., milking systems that incidentally required design and installation services." *Neibarger,* 439 Mich. at 536–37, 486 N.W.2d at 622. The court further found that the purchase agreement did not mention installation or service, or state any separate price for installation or service, and that thus, the agreement was one where the service was incidental to the product. *Id.* at 535, 486 N.W.2d at 622. As such, the contract between the plaintiffs and defendants was a contract for the sale of goods governed by the Uniform Commercial Code. *Id.* at 537, 486 N.W.2d at 622.

■ In the case at hand, Plaintiff purchased a custom blend of feed from Defendant. Incidental to the sale of the feed, Defendant had to assess the needs of Plaintiff's dairy cattle and design a custom blend of feed for the cattle. Defendant did not charge separately for the assessment and design of the feed; it only charged for the feed itself. As in *Neibarger,* the parties in the instant case entered into a contract for the sale of goods, with service being merely incidental to the sale of those goods. *See also Bailey Farms, Inc. v. NOR–AM Chem.,* 27 F.3d 188, 192 (6th Cir.1994) (finding that the sale of a soil fumigant was a contract for the sale of goods although sales representative informed user as to the proper use of the product).

### b. Damages to "Other Property"

Plaintiff further asserts that the economic loss doctrine does not apply because the alleged damages that Plaintiff suffered were to property other than the product sold. The plaintiffs in *Neibarger* suffered damages to their dairy cattle as a result of a defect in the quality of milking systems purchased from the defendants. The court in *Neibarger* found that the plaintiffs' complaints were attempts to recover for lost profits and conse-

quential damages, all compensable and governed solely under the Uniform Commercial Code. *Id.* at 533, 486 N.W.2d at 621. Ultimately, the court held that "[d]amage to property, where it is the result of a commercial transaction otherwise within the ambit of the UCC, should not preclude application of the economic loss doctrine where such property damage necessarily results from the delivery of a product of poor quality." *Id.* at 531, 439 N.W.2d at 620. *See also Detroit Edison Co. v. NABCO, Inc.,* 35 F.3d 236, 242–43 (6th Cir.1994) (explicitly rejecting federal district court finding that the economic loss doctrine did not preclude a recovery in tort for losses to "other property"); *Bailey Farms,* 27 F.3d at 191 (finding that the economic loss doctrine applied even though the loss of a crop due to misuse fumigant was technically a loss of "other property"). The courts have also considered the commercial expectations of the parties with respect to the product sold. *See, e.g., Detroit Edison,* 35 F.3d at 242 (determining that the consequences of inherent hazards were not beyond the plaintiff's contemplation since the plaintiff was a sophisticated commercial entity and in a position to fully negotiate potential liability); *Bailey Farms,* 27 F.3d at 191 (finding that a successful crop was part of the commercial expectations of the fumigant).

Similarly, Plaintiff in the instant case suffered damages to its dairy cattle and its dairy farming business as a result of allegedly defective feed provided by Defendant. As such, Plaintiff is attempting to recover for lost profits and consequential damages which are compensable under the Uniform Commercial Code. Although the damages were to property other than the defective product, the economic loss doctrine would still apply. The sophistication of the parties in this case, with their 30 year history of transactions together, bolsters this conclusion. Both parties reasonably can be expected to have known the possible consequences of bad feed. Therefore, since the damages sought by Plaintiff are economic losses resulting from the commercial sale of goods, Plaintiff's exclusive remedies are provided under the Uniform Commercial Code.

■ Although Defendants request the Court to dismiss Plaintiff's breach of contract claim, under the Uniform Commercial Code Plaintiff may recover for breach of contract for any failure of Defendant to perform according to its obligations under the contract. *See* M.C.L. § 440.2714. Therefore, Plaintiff's claim for breach of contract will not be dismissed.

■ Plaintiff claims that the tort of innocent misrepresentation should not be dismissed because it is a tort occurring in a transaction between contracting parties. However, if alleged misrepresentations concern the quality of the goods sold, and not matters extraneous to the contract, then the economic loss doctrine would still apply. *Martin v. A.O. Smith Corp.*, 931 F.Supp. 543, 547 (W.D.Mich.1996) (relying on *Huron Tool & Engineering Co. v. Precision Consulting Svs., Inc.*, 209 Mich.App. 365, 532 N.W.2d 541 (1995)). *See also Bailey Farms*, 27 F.3d at 191 (finding that *Neibarger* would bar any recovery for economic losses based upon the tort of negligent misrepresentation). Therefore, Plaintiff's claim for innocent misrepresentation will be dismissed.

### Conclusion

For the foregoing reasons, Defendant's motion for partial summary judgment will be GRANTED in part and DENIED in part. Count I (negligence) and Count III (innocent misrepresentation) of Plaintiff's Complaint will be dismissed. However, Count IV (breach of contract) of Plaintiff's Complaint will not be dismissed.

An Order consistent with this Opinion will be entered.

### ORDER

In accordance with the Opinion entered this date,

**IT IS HEREBY ORDERED** that Defendants' motion for partial summary judgment (docket no. 32) is **GRANTED in part** and **DENIED in part.** Count I (negligence) and Count III (innocent misrepresentation) of Plaintiff's Complaint are dismissed. Count II (breach of warranty) and Count IV (breach of contract) of Plaintiff's Complaint

remain in the case and will be resolved pursuant to proceedings set forth in the Case Management Order.