**BOWLING GREEN MUNICIPAL UTILITIES, Plaintiff,**

v.

**THOMASSON LUMBER CO., et al., Defendants.**

Civ. A. No. C94–105–BG(H).

United States District Court, W.D. Kentucky.

Oct. 11, 1995.

Timothy L. Mauldin, George E. Strickler, Jr., Bell, Orr, Ayers & Moore, Bowling Green, Kentucky, for Bowling Green Mun. Utilities.

Christopher P. O'Bryan, Louisville, Kentucky, T. Gregory Slother, Peachtree City, Georgia, for Thomasson Lumber Company.

Thomas N. Kerrick, Campbell, Kerrick & Grise, Bowling Green, Kentucky, for Olon Belcher.

## MEMORANDUM OPINION

HEYBURN, District Judge.

This matter is before the Court on the motion of Defendants, Thomasson Lumber Company and Olin Belcher d/b/a Olin Belcher Lumber Company, to dismiss Plaintiff's tort claims as a matter of law. Plaintiff, Bowling Green Municipal Utilities, purchased several hundred allegedly defective utility poles from Defendant Thomasson. Plaintiff's complaint seeks recovery in both tort and contract for the defective goods. Defendants assert that the Court must dismiss Plaintiff's tort claims because they are barred by the "economic loss rule," which precludes recovery in tort for economic losses sustained by a commercial buyer.

Being reluctant to predict whether Kentucky courts would apply the economic loss rule to the specific facts of this case, the Court certified the question to the Kentucky Supreme Court, which declined to hear the matter. Accordingly, the Court must undertake its own analysis. In a diversity action, this Court must follow the principles enunci-

ated by Kentucky's highest court. *National Union Fire Ins. Co. v. Watts*, 963 F.2d 148, 150 (6th Cir.1992). Where Kentucky courts have not decided the precise issue at hand, this Court must determine the path that the state would likely follow. *Overstreet v. Norden Lab*, 669 F.2d 1286, 1290 (6th Cir.1982).

## I.

Between June 6, 1989, and July 25, 1990, Thomasson manufactured, sold and delivered 343 wooden utility poles to Plaintiff. At some point prior to shipment Olin Belcher treated the poles with a wood preservative, copper napthenate. Plaintiff installed the wooden poles throughout its district and attached electric transformers, conductors and power lines to them. Sometime later, according to Plaintiff, it discovered that the copper napthenate treatment had failed to penetrate sufficiently the wood. The utility poles became decayed and weakened. Several poles collapsed and others were crushed by attached transformer banks. Plaintiff seeks to recover compensatory and economic damages to pay for the identification, removal, and replacement of the defective utility poles.

## II.

Tort and contract law occupy two separate and distinct fields. *Detroit Edison Co. v. NABCO, Inc.*, 35 F.3d 236, 239 (6th Cir.1994). Tort law has as its purpose the protection of society's members from harm. Contract law, including the law of warranty, arises out of society's desire to ensure the performance of promises. *Id.*

Products liability is a specialized branch of tort law that establishes responsibilities between consumers and manufacturers. Our common law establishes these responsibilities due to the inequality in the parties' bargaining power and the impracticality of the parties negotiating their responsibilities for each transaction. Contrarily, contract law is founded upon the premise that parties of equal bargaining power negotiate the terms of an agreement and each is then entitled to the benefit of the bargain. *Id.*

The otherwise distinct lines become blurred when a commercial buyer wishes to recover in tort for damages caused by a defective product when that product was purchased in a commercial transaction and the purchaser seeks to recover for damage to it alone. Through the years, courts have developed three different approaches to this dilemma. *See East River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 868–70, 106 S.Ct. 2295, 2300–02, 90 L.Ed.2d 865 (1986). The first, and majority position, is the so called "economic loss doctrine." Its premise is that recovery for the failure of a product itself is most properly addressed in a warranty action. *Id.* at 868, 106 S.Ct. at 2300–01. The economic loss doctrine mandates that the contracting party seek remedy pursuant to warranty law and precludes recovery via a tort claim. *Id.* It is a "judicially-created doctrine that bars tort claims and limits a plaintiff's recovery to those contractual remedies provided by the Uniform Commercial Code where the suit arises out of a commercial transaction and the loss incurred is only to the product itself." *Myrtle Beach Pipeline Corp. v. Emerson Elec. Co.*, 843 F.Supp. 1027, 1049 (D.S.C.1993).

The economic loss rule applies only in a commercial context. The policy reasons which courts have articulated in support of the economic loss doctrine reflect the perceived realities of commercial transactions. First, any loss based on damage to the product itself can, and should, be addressed by the contracting parties during negotiations. *Detroit Edison*, 35 F.3d at 240. Arms length bargaining parties can choose to allocate between themselves the risk that a product will not perform properly. *Id.* Second, the rule serves to preserve warranty law in the commercial setting. *East River*, 476 U.S. at 872, 106 S.Ct. at 2302–03. If products liability law permitted recovery for economic losses, there is the risk that "contract law would drown in a sea of tort." *Id.* at 866, 106 S.Ct. at 2299. Finally, it is thought that the economic loss rule limits liability in an appropriate manner. In a warranty action consequential damages are limited to those which are foreseeable. *Id.* at 874, 106 S.Ct. at 2303–04; U.C.C. § 2–715. There is also the

requirement of privity. *Id.* However, in a products liability action, one party may recover from another despite their lack of privity. The only limitation on recovery is the requirement that the loss be foreseeable. In this context, foreseeability serves as an "inadequate brake" on damages. Permitting recovery for all foreseeable claims of economic loss would require a manufacturer to account for the expectations of all persons in the stream of commerce who may encounter its product. Persons many steps removed from the initial transaction could claim economic loss. This could open the door to tremendous liability on the part of the manufacturer. *Id.*

Nevertheless, several courts have rejected the economic loss doctrine. *See Santor v. A & M Karagheusian, Inc.,* 44 N.J. 52, 66–67, 207 A.2d 305, 312–313 (1965); *City of La Crosse v. Schubert, Schroeder & Associates, Inc.,* 72 Wis.2d 38, 44–45, 240 N.W.2d 124, 127–128 (1976). These courts view the manufacturer's duty not to make a defective product as encompassing injury to the particular product itself. *East River,* 476 U.S. at 868–69, 106 S.Ct. at 2300–01. The rationale behind this view is that the policies supporting strict liability are equally applicable to economic losses. *Id.* at 869, 106 S.Ct. at 2301. It is arbitrary, courts adopting this view contend, to allow a plaintiff to recover for injury to body or other property, but not to the product itself. *Id.* Whether a manufacturer may be liable for vast sums is not an appropriate consideration.

The third and final view takes the middle ground, permitting a products liability action in certain circumstances when the product injures itself. *Id.* This view distinguishes the "disappointed users" from the "endangered ones." *Id.* Only the endangered users are permitted to sue in tort and only if the product produces loss through a situation potentially dangerous to persons or property. *Id.* As an alternative to rejection of the economic loss doctrine, Plaintiff requests we adopt this middle ground.

### III.

The first question this Court must answer is whether Kentucky law would allow an action in tort for "pure" economic loss, that is to say, damage only to the defective product itself, with no threat of harm to persons or other property. The last time Kentucky's highest court addressed this issue in a published opinion, it permitted recovery in tort for damage to a defective product itself. *See C.D. Herme v. R.C. Tway Company, Inc.,* 294 S.W.2d 534 (Ky.1956) (permitting a negligence claim for damage to the product itself, but decided prior to Kentucky's adoption of the U.C.C. and § 402A Restatement 2d Torts). Several years later, in *Dealers Transport Company, Inc. v. Battery Distributing Co.,* 402 S.W.2d 441, 446 (Ky.1965) the same court adopted the Restatement of Torts § 402A. The Restatement subjects a seller of an unreasonably dangerous, defective product to liability for physical harm to the consumer "or to his property." *Id.* The Restatement does not definitively state whether "his property" encompasses the defective product itself.

More recently, the Kentucky Court of Appeals found that Section 402A precludes a plaintiff from recovering economic losses in tort. *Falcon Coal v. Clark Equipment Co.,* 802 S.W.2d 947, 948 (Ky.App.1990). The *Falcon Coal* court held that the U.C.C. and Section 402A limit a plaintiff's tort recovery to damages for harm to "other" property and not to the product itself. *Id.* Because *Herme* predated Kentucky's adoption of Section 402A and the Uniform Commercial Code, the Court found it no longer dispositive of the issues presented here. Additionally, it distinguished *C.D. Herme* on the ground that it did not involve injury only to the product itself. *Id.*

The Court agrees with the rationale espoused by the *Falcon Coal* court. Since *C.D. Herme* was decided, Kentucky's legal landscape has been altered to the point where it can no longer be considered a binding precedent. In particular, Kentucky's adoption of the Uniform Commercial Code and Section 402A of the Restatement strips the case of much significance. The UCC provides specific remedies for damage to a product itself and Section 402A "is aimed at imposing liability for physical harm caused by an unreasonably dangerous product to the

user on his other property, but not for harm caused only to the product itself." *Id.* at 948. *Falcon Coal* represents the more accepted current view.[1]

Further, the relevant facts of this action make application of the economic loss doctrine particularly appropriate. Not only was this a commercial transaction but, more importantly, the parties were on equal footing in terms of bargaining power and sophistication. This is precisely the type of situation warranty law was designed to address.[2]

What would be so wrong, Plaintiff suggests, with providing another remedy under these circumstances? Why make such an arbitrary distinction between tort and contract remedies? The distinction, however, is not an arbitrary one. It is supported by solid common law concepts and practical considerations. The economic loss rule preserves the ability of commercial parties to negotiate their own deal under the U.C.C.'s commercially reasonable rules. To ignore it would severely disrupt normal commercial relationships. Without such a rule, the law of warranty would be obviated. If a commercial purchaser could recover in tort for damage to the product itself, contracting parties would no longer have the ability to negotiate certain terms of a sale. Instead, the law of warranty, with its flexibility, would be completely displaced by the strict application of tort law.

Contract and warranty law foster stability in the commercial setting. The certainty that comes with negotiating the terms of a bargain allows parties to act in accordance with their expectations. Permitting recovery for economic losses in tort destroys this certainty and, in essence, extricates the parties from their negotiated bargain. There is no legal or practical justification for this result in an arms length commercial transaction.

Plaintiff's suggestion that it must then wait for personal injury to occur before taking action completely misses the important distinction between Plaintiff's right of recovery under contract or warranty and its independent obligation to third parties using a product known to be dangerous. Plaintiff's obligation to prevent injury to others is an independent one.

■ Consequently, this Court agrees with the Sixth Circuit, which twice has held that Kentucky would not allow recovery in tort under either theories of negligence or strict liability where the subject damage is limited to the product itself. *See Miller's Bottled Gas, Inc. v. Borg–Warner Corp.,* 955 F.2d 1043, 1049–50 (6th Cir.1992); and *Scott v. Stran Buildings,* 923 F.2d 855, 1991 WL 3377 (6th Cir.1991) (unpublished per curiam opinion). The Court finds that in this particular case the economic loss doctrine bars Plaintiff's asserted tort claims as they relate to the defective poles themselves.

## IV.

■ The Court must decide next whether Kentucky would permit a buyer's recovery in tort if the seller's defective product damaged the buyer's "other" property. Although never asked directly to consider whether a consumer may recover in tort for damage to other property when the economic loss rule precludes tort recovery for damage to the product itself, Kentucky courts consistently have held that one may recover in tort for loss involving harm to persons or other prop-

---

1. *See East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) (clearly articulating the economic loss rule) and *Jones & Laughlin Steel Corp. v. Johns–Manville Sales Corp.,* 626 F.2d 280, 287 n. 13 (3d Cir.1980) (providing a large list of courts that held that economic losses are not recoverable in actions sounding in tort).

2. Recently, the Kentucky Supreme Court issued an unreported opinion that casts some doubt on the holding in *Falcon Coal. See Real Estate Marketing, Inc. v. Franz,* 885 S.W.2d 921 (Ky. 1994). In *Franz,* the issue was whether homeowners, when they are not the original purchas-

ers, can assert a viable claim against the homebuilder for structural defects. Neither contractual nor U.C.C. remedies were available to the *Franz* plaintiffs. The court noted "we do not go so far as the Court of Appeals' decision in *Falcon Coal,* limiting recovery under a products liability theory to damage or destruction of property 'other' than the product itself." This unpublished case is, of course, not binding precedent. It is also easily distinguishable from cases that traditionally merit the application of the economic loss rule, in that it does not involve a transaction between a commercial buyer and seller.

erty. *See Dealers Transport,* 402 S.W.2d at 446–47 (adopting Restatement 2d Torts § 402A); and *Falcon Coal,* 802 S.W.2d at 948 (interpreting § 402A as "imposing liability for physical harm caused by an unreasonably dangerous product to the user or his other property, but not for harm caused only to the product itself"). To allow such a recovery is conceptually consistent with adoption of the economic loss rule. To preclude such a recovery creates unfairness without any rationale.

By necessity, the Court must consider what, exactly, constitutes property "other" than the defective product. Although Defendant Thomasson supplied Plaintiff with allegedly defective poles, they were defective only because their crucial component, copper napthenate, was inadequate. Arguably, then, Thomasson could be liable in tort for damaged property other than the poles themselves, and Olin Belcher could be liable for the poles as well, since its defective "product" was the chemical treatment. This result would, of course, be nonsensical.

The prevailing trend is to consider the defective "product" the "finished product bargained for by the buyer, rather than its individual components." *Shipco 2295, Inc. v. Avondale Shipyards, Inc.,* 825 F.2d 925, 929–30 (5th Cir.1987); *see also King v. Hilton–Davis,* 855 F.2d 1047, 1051 (3rd Cir.1988) ("In determining whether a product 'injures only itself[,]' . . . we conclude that one must look to the product purchased by the plaintiff."). Under this definition the damaged "other" property for which Plaintiff may recover in tort means anything other than the poles themselves. This definition includes any property owned by Plaintiff that a defective pole proximately harmed, including any items attached to the poles by Plaintiff or a company other than either Defendant.

By permitting Plaintiff to recover in tort for damage to other property, another question naturally follows. Particularly, it is unclear from whom Plaintiff may recover. Since neither Defendant addressed this issue in their memoranda, the Court will consider it later, upon motion of any party.

The Court will enter an order consistent with this memorandum opinion.

## ORDER

The Court having issued a Memorandum Opinion, and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss Plaintiff's tort claims for strict liability and negligence are SUSTAINED to the extent that Plaintiff seeks to recover in tort for the cost of identifying, repairing, or replacing the defective utility poles.