Steve **GOOCH** d/b/a Gooch
Farms, Plaintiff,

v.

**E.I. DU PONT DE NEMOURS
& COMPANY, Defendant.**

**No. Civ.A. 4:97CV–144–M.**

United States District Court,
W.D. Kentucky,
Owensboro Division.

Feb. 8, 1999.

## MEMORANDUM OPINION AND ORDER

McKINLEY, District Judge.

This matter is before the court on the Motion of the Defendant, E .I. du Pont de Nemours & Company (hereinafter Du-Pont), for Summary Judgment. [DN 45]. The Plaintiff, Steve Gooch d/b/a Gooch Farms (hereinafter Gooch), timely filed a response to this motion. [DN 53]. Gooch initiated this products liability lawsuit to recover for damages suffered after he applied the Defendant's herbicide to his corn crop. Plaintiff's claims are based on the theories of negligence, strict liability, breach of express and implied warranty, violation of the Kentucky Consumer Protection Act, and fraud.[1] The Court held oral arguments on the Motion for Summary Judgment on January 22, 1999. Having considered these arguments and the party's briefs, the Court finds this matter ripe for decision. For the reasons discussed below, the Defendant's Motion is **GRANTED.**

### STATEMENT OF FACTS

Gooch owns and operates a large farming operation under the business name of Gooch Farms. In 1996, the time relative to this lawsuit, Gooch farmed approximately 1900 acres. Of these 1900 acres, Gooch owned 500 acres with the remainder being farmed under sharecropping agreements. Gooch planted corn on approximately 1000 acres of this land. Gooch is an experienced, sophisticated and successful farmer. Gooch is also a licensed private pesticide applicator in the state of Kentucky with over 30 years of experience.

In June of 1996, Gooch purchased Accent®SP (hereinafter Accent) for application to the corn crop from Parrish Shop and Sales. Accent is a herbicide manufactured by DuPont designed to control rhizome johnson grass. Gooch stated in his

Kenneth W. Humphries, Hopkinsville, KY, for plaintiff.

J. Michael Brown, Wyatt, Tarrant & Combs, Louisville, KY, John P. Mandler, Mark J. Carpenter, Faegre & Benson, Minneapolis, MN, for defendant.

1. In a prior opinion, this court granted Du-Pont's Partial Motion for Summary which dismissed Gooch's claims based upon the Kentucky Consumer Protection Act and fraud and Gooch's relief requesting punitive damages. *See* Order of 8/10/98 [DN 37].

deposition that he used Accent every year since the product became available in the market in 1989 or 1990. Gooch also testified that he read the label accompanying the Accent before applying it in 1996. Furthermore, he testified that in prior years when he purchased and applied Accent, he likewise read the label before applying the product. The label contains the following warranty information:[2]

## LIMITATION OF WARRANTY AND LIABILITY

It is impossible to eliminate all risks associated with the use of this product. Such risks arise from weather conditions, soil factors, off target movement, unconventional farming techniques, presence of other materials, the manner of use or application, or other unknown factors, all of which are beyond the control of DuPont. These risks can cause: ineffectiveness of the product; crop injury, or; injury to non-target crops or plants.

DuPont does not agree to be an insurer of these risks. WHEN YOU BUY OR USE THIS PRODUCT, YOU AGREE TO ACCEPT THESE RISKS.

DuPont warrants that this product conforms to the chemical description on the label thereof and is reasonably fit for the purpose stated in the Directions for Use, subject to the inherent risks described above, when used in accordance with the Directions for Use under normal conditions.

DUPONT MAKES NO OTHER EXPRESS OR IMPLIED WARRANTY OF FITNESS OR OF MERCHANTABILITY OR ANY OTHER EXPRESS OR IMPLIED WARRANTY.

IN NO EVENT SHALL DUPONT OR SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL OR SPECIAL DAMAGES RESULTING FROM THE USE OR HANDLING OF THIS PRODUCT.

[DN 53, Affidavit of Steve Gooch, Attachment]. The warranty further limits damages to recovery of the purchase price of the Accent or replacement of the product.

2. Gooch provided testimony during his deposition concerning his knowledge and understanding of the warranty language contained in the Accent label. The label he referred to was attached as an exhibit to the deposition. That label, however, differs from the label provided by Gooch as an attachment to his affidavit accompanying his Response to DuPont's Motion for Summary Judgment. [DN 53 Affidavit of Steve Gooch Attachment]. The label made part of the exhibit to Gooch's deposition appears to be a current version as Gooch testified he obtained that label when DuPont requested such document ·by going "into one of the chemical dealers and ask[ing] them to look in their book for a complete— complete label." [DN 46 Affidavit of Mark Carpenter. Exhibit A, Excerpts from deposition of Steve Gooch, p 31–32]. That label contained the following language which appears similar to that quoted above:

Du Pont warrants that this product conforms to the chemical description on the label ·thereof and is reasonably fit for the purposes stated on such label only when used in accordance with directions under normal use conditions. It is impossible to eliminate all risks inherently associated with the use of this product. Crop injury, ineffectiveness, or other unintended consequences may result because of such factors as weather conditions, presence of other materials, or the manner of use or application, all of which are beyond the control of Du Pont. In no case shall Du Pont be liable for consequential, special, or indirect damages resulting from the use or handling of this product. All such risks shall be assumed by the buyer. Du Pont will not be responsible for losses or damage resulting from application of ACCENT when applied to crops treated previously with "Counter" 20 CR applied in a band at planting on soils of 4% organic matter content or less. DU PONT MAKES NO WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE NOR ANY OTHER EXPRESS OR IMPLIED WARRANTY EXCEPT AS STATED ABOVE.

[DN 46 Affidavit of Mark J. Carpenter, Exhibit A, Excerpt from the Deposition of Steve Gooch, Exhibit 2]. While the language of the two labels seems substantially similar, for purposes of this motion, the Court will rely upon the label attached to Gooch's affidavit because that label appears to be the label existing on the Accent at the time Gooch purchased the product.

Before purchasing the Accent, Gooch engaged in several conversations with DuPont's field representative, Earl Strawder, who informed him that Accent was a good product to control rhizome johnson grass. Gooch conducted additional research about Accent by reading the information contained in the herbicide's brochures, speaking with other farmers and county extension agents, and reviewing magazine articles. As mentioned above, Accent is a herbicide that when applied to a field kills selective plants, specifically johnson grass, without similarly affecting other plants, specifically corn. Gooch purchased the Accent to accomplish just that purpose.

After purchasing the product, Gooch set out to apply the Accent to a portion of his corn crop by using a John Deere hi-cycle sprayer. When Gooch reached the site he was to spray, he mixed the Accent which came in a solid form in plastic bags that showed no signs of tampering. Gooch testified that he followed the label instructions in mixing the Accent. Gooch then applied the mixture to approximately 56 acres of his farmland. Three days following the application, Gooch began to notice signs of stunting injury to the corn. During the next two weeks the corn worsened as it began to curl and twist. Gooch testified by deposition that this injury only occurred to the rows of corn sprayed with Accent, the unsprayed rows of corn remained healthy and productive. The corn, however, did not completely die. It eventually grew out of the injury, but not in time to produce any ears of corn.

Alarmed, Gooch notified Parrish Shop & Sales from whom he purchased the product, as well as the local county extension agent of the problem with the corn. The agent took samples of the corn for testing. Gooch and Ed Strawder also took individual samples of the corn to conduct their own tests. Dr. James Martin performed the tests on the samples obtained by the county extension agent. These tests disclosed that the corn suffered from severe Accent damage. Mr. Strawder's testing, performed by APT Labs, Inc., concluded that the corn suffered because it contained gly-phosate in a concentration of 1.74 parts per million. Glyphosate is the main ingredient contained in a chemical commonly known as Roundup which is lethal when applied to plants. Gooch's samples were sent to A & L Labs who subcontracted the testing to Minnesota Valley Testing Laboratories. These tests revealed that the samples contained glyphosate at a concentration of only .16 parts per million. Other testimony in the form of depositions and affidavits obtained by Gooch express an opinion that the injury to the corn resulted from the application of the Accent.

In June of 1997, Gooch filed this lawsuit against DuPont in the Henderson Circuit Court. DuPont timely remove the action to this Court pursuant to 28 U.S.C. § 1441. Gooch's existing claims are grounded in theories of negligence, strict products liability, breach of express and implied warranty. DuPont has filed a Motion for Summary Judgment to which Gooch filed a timely response.

### STANDARD OF REVIEW

In ruling on a motion for summary judgment, this Court must determine whether there is a genuine issue as to any material fact and if the moving party is entitled to a judgment as a matter of law. FED.R.CIV.P. 56(c); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir.1989). The party moving for a summary judgment bears the burden of showing an absence of a material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine dispute exists when the evidence is of such a nature that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, this Court must determine if there is significantly probative evidence, not merely colorable evidence, to support a verdict for the nonmoving party. *Id.* at 249, 106 S.Ct.

2505. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505. The simple possibility that a factual dispute exists is insufficient to prevent summary judgment. *Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 863 (6th Cir. 1986). Summary judgment is warranted where, after the close of discovery, one party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548. When examining the evidence on a motion for summary judgment, the Court must look to the evidence in light most favorable to the nonmoving party. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir.1996), *cert. denied* 519 U.S. 1055, 117 S.Ct. 683, 136 L.Ed.2d 608 (1997). This Court has original jurisdiction under the diversity of citizenship provision found in 28 U.S.C. § 1332. Thus, this Court must apply the substantive law of the state of Kentucky.

### DISCUSSION

A. *Implied and Express Warranty Claims*

1) *Application of Warranty Disclaimers Found on the Accent Label*

DuPont asserts that Gooch's claims for breach of implied warranty must fail because of the language found within the Accent label which disclaims any implied or express warranties. Gooch responds that such disclaimers are ineffective and unconscionable. Additionally, Gooch avers that the course of dealing or usage of trade imply warranties that a company will compensate a farmer in the event his or her crop is injured or lost because of a chemical application.

██ Under Kentucky law, a party may exclude or disclaim any implied warranty of merchantability or any implied warranty of fitness by including the appropriate language in the contract or agreement. The KRS 355.2–316(2) provides as follows:

> [T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

The statute further provides that warranties can be excluded through a prior course of dealing or usage of trade in the industry. KRS 355.2–316(3)(c); *Bickett v. W.R. Grace & Co.,* 12 U.C.C.Rep.Serv. 629 (W.D.Ky.1972). As the statute requires, the warranty disclaimer language must conspicuously appear on the writing. The disclaimer is conspicuous if it is set in larger than normal print, a different typesetting, a different color, or otherwise structured so as to draw the attention of the other contracting party. KRS 355.1–201(10) (A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it.); *Gooch v. Dowell, Inc.,* Ky.App., 743 S.W.2d 38, 40 (1988); *Cline v. Allis–Chalmers Corp.,* Ky.App., 690 S.W.2d 764, 768 (1985); *Greg Coats Cars, Inc. v. Kasey,* (Ky.App.) 576 S.W.2d 251, 253 (1978). The decision regarding the conspicuousness of the warranty disclaimer is a question of law that the Court must decide. KRS 355.1–201(10).

██ The Court finds the language used by DuPont in its warranty disclaimer to be conspicuous. This disclaimer language appears in an offset boxed section. The heading is written in a bold typesetting and the specific language disclaiming all the implied and express warranties appears in all capital letters. These actions were adequate to put a reasonable party on notice of the disclaimers. In the present case, the language did provide notice

to Gooch that DuPont made no other warranties concerning the product. Gooch's deposition reveals that he read the disclaimer language before applying the Accent. Furthermore, he understood it to mean that "DuPont was selling a product they made no warranty on." [DN 46, Affidavit of Mark J. Carpenter, Exhibit A, Excerpts from the Deposition of Steve Gooch, p 34–37]. The disclaimer specifically states that "DUPONT MAKES NO OTHER EXPRESS OR IMPLIED WARRANTY OF FITNESS OR OF MERCHANTABILITY OR ANY OTHER EXPRESS OR IMPLIED WARRANTY." Such language satisfies the requirements of KRS 355.2–316. Thus, the warranty disclaimer found within the Accent label effectively disclaims all other express or implied warranties. The warranty language mentioned above effectively nullifies any other express or implied warranties made by DuPont. *See Cline*, 690 S.W.2d at 768.

Gooch claims a right to recover based upon certain implied warranties found in prior course of dealing or usage of trade that a chemical company would compensate a farmer for damage suffered from a chemical injury to a crop. Summary judgment is appropriate on this claim because the warranty provision effectively disclaimed any implied warranty claims that arose from course of dealing or usage of trade. Similarly, the Court will sustain DuPont's Summary Judgment Motion as to Gooch's claims for breach of an express warranty based on certain statements made by Ed Strawder because of the Accent label's disclaimer.

■ However, the warranty provision mentioned above does not disclaim all warranties. The Limitation of Warranty and Liability clause specifically states that "DuPont warrants that this product ... is reasonably fit for the purpose stated in the Directions for Use, subject to the inherent risks described above, when used in accordance with the Directions for Use under normal conditions." This language in effect gives an express warranty of merchantability to the user or purchaser of Accent. The disclaimer language following this warranty does not exclude this express warranty of merchantability. The warranty states that "DUPONT MAKES NO **OTHER** EXPRESS OR IMPLIED" warranties. This phrase implies that DuPont made some warranties on the packaging that it intended not to disclaim. In interpreting warranty disclaimers, this Court must construe, when reasonable, words which create an express warranty and words that negate or limit such warranties in a manner consistent with one another. KRS 355.2–316(1). The express warranty that the Accent is reasonably fit for the purpose stated on the label is one warranty DuPont did not intend to disclaim. Therefore, Gooch's claims based upon the express warranty are not excluded by the warranty disclaimer. Gooch's claim is that the Accent he used was not reasonably fit for the purpose as stated on the label.

■ DuPont argues that there is no disputed issue of fact relative to whether its product is reasonably fit for its labeled purpose. It argues that there is no evidence to suggest that the product did not control johnson grass which is its stated purpose. DuPont's position is the undisclaimed express warranty does not include a guarantee that the product will not cause damage to the crop. The Court disagrees. The directions for use state that the product can be used on field corn. The stated purpose is to control johnson grass. The product would not be reasonably fit for the stated purpose if it damaged the very crop it was designed to aid. The Court is of the opinion that the undisclaimed warranty upon which Gooch's claim is based is not simply that the product will control johnson grass—but that it will do so without harming the crop upon which it is applied. Therefore, the Court rejects DuPont's claim that there are no material facts in dispute as to whether the Accent was fit for its labeled purpose.

■ DuPont also claims that Gooch failed to rely on the warranty in purchas-

ing the Accent, therefore he cannot state a claim for breach of express warranty because it was not part of the basis of the bargain. *See Overstreet v. Norden Labs., Inc.,* 669 F.2d 1286 (6th Cir.1982). However, at this point in the litigation, sufficient evidence appears in the record to support that Gooch relied on this warranty. He used Accent since it first became available on the market. Gooch testified by deposition that he read the product label in previous years before applying the product and followed the instructions contained on the label. He purchased the Accent knowing that the product was the best on the market for controlling rhizome johnson grass without damaging the corn. This knowledge came from, *inter alia,* reading of the Accent label which appears not to have changed much over the years. Therefore, the Court finds unpersuasive DuPont's argument that summary judgment is appropriate because the warranty was not part of the basis of the bargain.

### 2) *Application of Warranty Language Limiting Liability*

The summary judgment inquiry does not end with a finding that the warranty language does not disclaim DuPont's express warranty that the Accent is fit for the ordinary purpose described on the label. The Court must next consider the effect of the warranty language that excludes liability for incidental, consequential or special damages resulting from the use or handling of the Accent.

Kentucky's law under the UCC allows parties to agree to contractual terms that include additional or substitute remedies other than those available under the code. KRS 355.2–719(1)(a) provides that

> the agreement may provide for remedies in addition to or in substitution for those provided in this article and may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies to return of the goods and repayment of the purchase price or to repair and replacement of nonconforming goods or parts.

The statute, however, goes on to state that if an exclusive or limited remedy "fails of its essential purpose," then the party may seek any remedy available under the U.C.C., which includes consequential damages. KRS 355.2–719(2). Furthermore, contracting parties may limit or exclude consequential damages in their agreement unless this would prove unconscionable. KRS 355.2–719(3).

Turning first to determine whether the limitation of consequential damages clause "fails of its essential purpose," the Court finds that it does not. A remedy does not "fail of its essential purpose" simply because it limits the recovery of a particular relief sought. *Hill v. BASF Wyandotte Corp.,* 696 F.2d 287 (4th Cir. 1982) A limitation of remedy provision fails of its essential purpose when it deprives a party of the substantial value of its bargain. For example, the "failure of essential purpose" exception best applies to situations where the contract limits liability to repair or replacement of a product and that product is in a condition where the defect cannot be fully corrected by the repair or replacement of the defective part or product. *See generally Rudd Constr. Equip. Co. v. Clark Equip. Co.,* 735 F.2d 974, 982 (6th Cir.1984); *Ford Motor Co. v. Mayes,* Ky.App., 575 S.W.2d 480, 484 (1978); *Middletown Eng'g Co. v. Climate Conditioning Co.,* Ky.App., 810 S.W.2d 57, 59 (1991); *Carboline Co. v. Oxmoor Ctr.,* 40 U.C.C.Rep.Serv. 1728 (Ky.Ct.App.1985); DAVID J. LEIBSON & RICHARD H. NOWKA. THE UNIFORM COMMERCIAL CODE OF KENTUCKY, § 2.6(G) (2d ed.1992). We do not have such a situation here.

Next, even if the Court were to conclude that the limited remedy failed of its essential purpose, it must separately consider whether the language on the Accent label limiting the ability to recover consequential damages is conscionable. Kentucky's version of the U.C.C. allows contracting parties to limit consequential damages unless such limitation proves unconscionable. KRS 355.2–719(3). "Limitation of conse-

quential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not." *Id.* Consequential damages include those injuries resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not be reasonably prevented by cover or otherwise. KRS 355.2–715(2). Consequential damages also include injury to the person or property proximately resulting from any breach. *Id.* Gooch's losses for his crop constitute such consequential damages.

The issue of conscionability is one which the Court must decide as a matter of law. KRS § 355.2–302(1). In making a conscionability determination, the Court must look at the facts and determine whether the clause in the contract was conscionable at the time the parties entered the contract. *Id.* A provision is unconscionable when it is "so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." U.C.C. § 2–302 cmt. 1. The principle underlying this rule is to prevent oppression and unfair surprise, not to disturb the allocation of risks because of superior bargaining power. *Id.*

After a thorough review of Kentucky's case law, this Court uncovered no decisions specifically addressing the conscionability issue of a clause limiting consequential damages for injury resulting from the application of agricultural chemicals. The only Kentucky decision discussing the conscionability of a clause limiting consequential damages held the provision not unconscionable. *Carboline Co. v. Oxmoor Ctr.,* 40 U.C.C.Rep.Serv. 1728 (Ky.Ct.App.1985). In *Carboline,* the parties contracted to have a roof placed on Oxmoor Mall. The roof, however, continued to leak. After a third application of the product, the parties entered into a limited warranty agreement which contained a limited remedy provision and an exclusion of incidental and consequential damages. The Kentucky Court of Appeals held the clause limiting liability not to be unconscionable because

of the sophisticated commercial setting of the transaction.

Cases from other jurisdictions vary on whether such disclaimers of consequential damages in the chemical agriculture business are conscionable or unconscionable. The cases holding such clauses unconscionable focus upon the fact enforcing the limitation of consequential damages would leave the farmer without any substantial recourse for his loss. These cases note such agreements are one-sided and substantively unconscionable. Furthermore, the courts focus on the fact that a farmer lacks any bargaining power with the manufacturer, that herbicides cannot be purchased without similar exclusions because most manufacturers include similar disclaimers, and that the farmer cannot test the herbicide prior to purchase. Therefore, these courts hold that these clauses are procedurally and/or substantively unconscionable. *Walker v. American Cyanamid Co.,* 130 Idaho 824, 948 P.2d 1123 (1997) (holding limitation of consequential damage clause unconscionable because it was ambiguous constituting an unfair surprise); *Adams v. American Cyanamid Co.,* 1 Neb.App. 337, 498 N.W.2d 577 (1992); *Latimer v. William Mueller & Son, Inc.,* 149 Mich.App. 620, 386 N.W.2d 618 (1986); *Majors v. Kalo Laboratories, Inc.,* 407 F.Supp. 20 (M.D.Ala.1975). The courts holding such limitation of consequential damages conscionable do so on the ground that it is appropriate to shift the risk of loss to the farmer who understands such unknown or undeterminable risks are a natural part of the uncertainties inherent in the farming business; that the agreement arose out of a commercial transaction between sophisticated parties which is not unduly one-sided; the farmer used the product for an extended period of time which proved the limitation of consequential damages did not deter the use of the product; that the plaintiff is not left without a remedy because he or she may still recover direct damages; and, that the farmer failed to satisfy its burden to show the clause resulted from the parties unfair

bargaining positions and that the inclusion of such a clause constituted unfair surprise. *Bailey Farms Inc. v. NOR–AM Chem. Co.*, 27 F.3d 188 (6th Cir.1994); *Lindemann v. Eli Lilly & Co.*, 816 F.2d 199 (5th Cir.1987); *Jim Dan, Inc. v. O.M. Scott & Sons Co.*, 785 F.Supp. 1196 (W.D.Pa.1992); *Eugene Jetvig, Inc. v. Monsanto Co.*, 19 U.C.C.Rep.Serv.2d 797 (D.Minn.1992); *Earl Brace & Sons v. Ciba–Geigy Corp.*, 708 F.Supp. 708 (W.D.Pa.1989); *Southland Farms, Inc. v. CIBA–Geigy Corp.*, 16 U.C.C.RepServ.2d 53 (S.D.Ala.1989); *Fleming Farms v. Dixie Ag Supply, Inc.*, 631 So.2d 922 (Ala. 1994); *American Nursery Prods., Inc. v. Indian Wells Orchards*, 115 Wash.2d 217, 797 P.2d 477 (1990); *Muzzy v. E.I. du Pont de Nemours & Co.*, 24 U.C.C.Rep. Serv.2d 917 (Minn.Dist. Court 1993).

■ The Court finds conscionable that portion of the Accent label limiting liability for consequential damages. Gooch was not surprised by the language limiting consequential damages as he testified in his deposition that he read the label in previous years before purchasing the product. Gooch purchased Accent continuously for a number of years despite this provision. Gooch was a sophisticated farmer with extensive experience in purchasing and applying herbicides. Furthermore, it is appropriate to shift the risk of loss to the farmer in this situation given the many uncertainties and variables that exist in the fanning business. While it initially appears unfair to enforce such a provision as most herbicides sold in the United States contain similar language limiting consequential damages, the Court notes that this provision was in fact part of the bargain between the Gooch and DuPont. In exchange for including such a limitation of consequential damages clause, the farmer, Gooch, receives the herbicide for a lower price. Economics dictate that without such a limitation, the manufacture would pass on the costs of paying consequential damages associated with crop damage to the farmer in the form of higher prices. Thus, by including the limitation of liability clause, the farmer receives

the product for a lower price. For these reasons, the Court finds as a matter of law that the limitation of consequential damages is not unconscionable.

3) *Preemption by the Federal Insecticide Fungicide and Rodenticide Act*

■ Even if the Court held the clause limiting consequential damages unconscionable, the Court finds the Federal Insecticide, Fungicide and Rodenticide Act (hereinafter FIFRA) preempts Gooch's breach of warranty claim that the Accent was not reasonably fit for application to his crop.

FIFRA requires the registration of all pesticides before they can be sold in the United States. 7 U.S.C. § 136a. The statute and its accompanying regulations set forth a rigid process of registration that requires among other things submission and approval of the label and packaging of the pesticide. *See* 7 U.S.C. § 136a(c); 40 C.F.R. §§ 152.50, 156. Lastly, FIFRA expressly sets forth the authority left to the states under the statute. 7 U.S.C. § 136v(a) & (b). These provisions read:

**(a) In general**

A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

**(b) Uniformity**

Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

*Id.* While addressing the preemption issue, the United States Supreme Court admonished the lower courts to narrowly construe the preemptive effect of a legislative enactment by adhering to the notion that the "historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest

purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). FIFRA does not entirely preclude state regulation of pesticides and their use. *See generally Wisconsin Public Intervenor v. Mortier*, 501 U.S. 597, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991) (holding FIFRA does not preempt town's ordinance regulating the use of pesticides). Courts have interpreted FIFRA's provisions to reveal Congress' intent and objective to expressly preempt state statutory or common law which requires labeling or packaging different from the federal law. *See Kuiper v. American Cyanamid Co.*, 131 F.3d 656, 662 (7th Cir. 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1839, 140 L.Ed.2d 1090 (1998); *Grenier v. Vermont Log Bldgs. Inc.*, 96 F.3d 559, 562–63 (1st Cir.1996); *Taylor AG Industries v. Pure–Gro*, 54 F.3d 555, 560 (9th Cir.1995); *MacDonald v. Monsanto Co.*, 27 F.3d 1021, 1024–25 (5th Cir.1994); *Worm v. American Cyanamid Co.*, 5 F.3d 744, 747 (4th Cir.1993); *Papas v. Upjohn Co.*, 985 F.2d 516, 518 (11th Cir.), *cert. denied sub. nom, Papas v. Zoecon Corp.*, 510 U.S. 913, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993); *King v. E.I. Dupont De Nemours & Co.*, 996 F.2d 1346, 1349 (1st Cir.), *cert. dismissed,* 510 U.S. 985, 114 S.Ct. 490, 126 L.Ed.2d 440 (1993).

While it is easy to say that FIFRA preempts any state claim that would impose labeling requirements "in addition to or different from" federal law, it is not as easily applied. Thus, the Fourth Circuit developed a test to assist in determining if FIFRA preempts a state law claim. This test requires an examination of "whether one could reasonably foresee that the manufacturer, in seeking to avoid liability for the error, would choose to alter the product or the label." *Worm*, 5 F.3d at 747–48; *Burt v. Fumigation Serv. & Supply, Inc.*, 926 F.Supp. 624, 630 (W.D.Mich.1996). In other words, if the manufacture could avoid liability by altering the label, then

FIFRA preempts the claim giving rise to that liability. The federal circuit courts unanimously hold that FIFRA preempts claims brought by an individual for injuries suffered as a result of the pesticide manufacturers' negligent failure to warn or inadequate labeling. *Grenier*, 96 F.3d at 563–64; *Taylor*, 54 F.3d at 561; *MacDonald*, 27 F.3d at 1024; *Worm*, 5 F.3d at 748; *Papas*, 985 F.2d at 518; *King*, 996 F.2d at 1349; *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 371 (7th Cir.1993); *see also Lyall v. Leslie's Poolmart*, 984 F.Supp. 587, 592–93 (E.D.Mich.1997); *Burt*, 926 F.Supp. at 631; *Kinser v. Ciba–Geigy Corp.*, 837 F.Supp. 217, 220 (W.D.Ky.1993); *Wright v. Dow Chem. U .S.A.*, 845 F.Supp. 503, 509 (M.D.Tenn.1993); *Gibson v. Dow Chem. Co.*, 842 F.Supp. 938, 940 (E.D.Ky. 1992). FIFRA, however, does not preempt claims grounded in legal theories such as negligent design, manufacturing, testing and unreasonably dangerous defective products. *Grenier*, 96 F.3d at 565; *Worm*, 5 F.3d at 749; *Lyall*, 984 F.Supp. at 595–97; *Burt*, 926 F.Supp. at 631.

Gooch contends that his claims are not preempted by FIFRA because they do not assert any label based claims. The Court finds this argument unpersuasive. Gooch's breach of warranty claim, that the Accent was not reasonably fit for the purposes stated in the directions for use, is based on statements found in the Limitation of Liability section of the label and assertions made in the Directions for Use. These statements were required by FIFRA[3] and approved by the EPA. The Court finds persuasive the decision of *Bruce v. ICI Americas, Inc.*, 933 F.Supp. 781 (S.D.Iowa 1996).

In *Bruce*, the court held that FIFRA preempted the plaintiff's claims for breach of an express warranty. The plaintiffs based their claim on statements contained on the label of each bag that "expressly

---

**3.** The Court points out that no provisions in FIFRA or its accompanying regulations explicitly require the placement of language on the label that the product is reasonably fit for

the purposes stated in the directions for use. However, for the reasons discussed below, the Court finds that FIFRA preempts the express warranty claim based upon that statement.

warranted to the ultimate consumer that the insecticide was for the control of corn rootworm, conformed to the chemical description of the label and was 'reasonably fit for use as directed thereon.'" *Id.* at 787. The court held that FIFRA preempted these claims because "FIFRA and its regulation require Zeneca to provide the labeling information which forms the basis for the portion of Plaintiffs' claim for breach of express warranty which is based on Zeneca's label." *Id.* The court opined that the regulations required the defendant to place information on the label pertaining to the directions for use, the use classification, the sites of application, the target pests and the dosage rate for each site and pest. *Id.* (citing 40 C.F.R. § 156.10(i)(2)(x)(B), (h)(2), (i)(1), (i)(2)(i)). Because the information was intertwined with the plaintiff's express warranty claims, the court held that FIFRA preempted the claims for breach of express warranty.

In the present case, Gooch's claim for breach of an express warranty likewise is based upon language contained in the Accent label that the product is reasonably fit for the purposes stated within the directions for use. This warranty is interlaced with or related to the FIFRA requirement concerning the use and direction for use of the herbicide. Allowing such an express warranty claim would implicitly call into question the statements made in the Direction for Use. In so doing, the Court would be imposing requirements "in addition to or different from" those required and approved by FIFRA and the EPA. This is precisely what FIFRA's preemption provision forbids.

## B. *Tort Claims*

Gooch's complaint sets forth a claim for recovery as a result of the damage to his corn based on the theories of strict liability and negligence. DuPont asserts that its motion for summary judgment on these claims is appropriate under three separate

rationales: the economic loss doctrine bars the tort based claims; FIFRA preempts label based tort claims; and the evidence in the record fails to support the strict liability and negligence claims.

### 1) *Economic Loss Doctrine as a Bar to Gooch's Tort Claims*

DuPont contends that summary judgment is appropriate under the economic loss doctrine which prevents a commercial buyer from bringing strict liability and negligence claims to recover purely economic losses. They argue that the "economic loss doctrine" applies not only to tort claims for damages to the product purchased, but also to tort claims seeking recovery for lost commercial expectations. Thus, because the "economic loss doctrine" applies when the commercial expectations of the product remain unsatisfied, the doctrine bars Gooch's claims that the Accent failed to serve its commercial purpose of controlling rhizome johnson grass without damaging the corn crop. Gooch contends that the economic loss doctrine applies only where a plaintiff seeks recovery under tort law for damage to the product sold. Here, Gooch seeks recovery for damage sustained to his property, the corn.

The "economic loss doctrine" bars tort claims seeking recovery for damage to the product purchased. The Supreme Court of Kentucky, to date, has not adopted or rejected the "economic loss doctrine." Under such circumstances, this Court must predict whether the state Supreme Court would adopt the doctrine. *Bailey Farms, Inc. v. NOR–AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir.1993); *Overstreet v. Norden Laboratories, Inc.*, 669 F.2d 1286, 1290 (6th Cir.1982); *Bowling Green Mun. Utils. v. Thomasson Lumber Co.*, 902 F.Supp. 134, 136 (W.D.Ky.1995). The Sixth Circuit and Judge Heyburn of this court[4] have held that the Kentucky Supreme Court would adopt the economic loss doctrine and not allow recovery for

---

4. The undersigned, in an unpublished decision, has held similarly.

purely economic losses in a product liability action based upon negligence or strict liability. *Miller's Bottled Gas, Inc. v. Borg–Warner Corp.*, 955 F.2d 1043, 1050 (6th Cir.1992); *Scott v. Stran Bldgs.*, 923 F.2d 855, 1991 WL 3377 (6th Cir.1991) (unpublished decision); *Thomasson*, 902 F.Supp. at 138; *see also Falcon Coal Co. v. Clark Equip. Co.*, Ky .App., 802 S.W.2d 947, 948–49 (1990).[5]

■ The rationale of the "economic loss doctrine" rests on the idea that the Uniform Commercial Code and contract law is the proper body of law to adequately provide for the plaintiffs recovery. *Thomasson*, 902 F.Supp. at 136–37 (citing *East River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986)). While the "economic loss doctrine" prevents tort based recovery where the damage occurs to the product, it does not apply when the plaintiff suffers damage to "other property." In the present case, Gooch purchased Accent for application to his corn crop and, as a result of a claimed defect in the product, the corn crop suffered damage resulting in reduced yields for that year. Thus, the question the Court must answer is whether the damage to Gooch's corn crop constitutes damage to other property so as to make the "economic loss doctrine" inapplicable. The Court finds that the corn does not constitute such other property because the thrust of the Plaintiff's complaint is to recover for economic losses suffered as a result of a failed commercial transaction— the purchase of a herbicide from the Defendant to control rhizome johnson grass without damaging his corn. Gooch's claims ultimately seek to recover for consequen-

tial damages resulting from a commercial transaction.

The Sixth Circuit, in interpreting Michigan law, held that the economic loss doctrine barred a plaintiff farmer's tort claims against a manufacturer of a soil fumigant which destroyed his watermelon crop. *Bailey Farms, Inc. v. NOR–AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir.1994). The court expressed

[a]lthough the watermelon crops at issue in this case also are technically "other property" than the purchased product, a successful crop was part of the commercial expectations for the fumigant, and the loss of that crop allegedly the result of a defect of the use of the purchase of the product.... We therefore reject this claim for the reasons stated in *Neibarger [v. Universal Coops., Inc.*, 439 Mich. 512, 486 N.W.2d 612 (1992) ].

*Id.* In *Neibarger*, 439 Mich. 512, 486 N.W.2d 612, the Michigan Supreme Court adopted and applied the "economic loss doctrine" to bar two dairy farmers' negligent representation claims for damages suffered after they purchased the defendant's milking system. The farmers alleged the milking system caused their cows to experience instances of mastitis, partial losses of their udders, and decreased milk production, all of which forced the plaintiffs to sell off much of their individual herds. The court opined that the economic loss doctrine applies where the claims arise from a commercial transaction in goods and the plaintiff suffers only economic losses. Furthermore, the court stated that the doctrine applies "where a purchaser's expectations in a sale are frustrated because the product he

---

**5.** In *Real Estate Marketing, Inc. v. Franz*, 885 S.W.2d 921 (Ky.1994), the Kentucky Supreme Court stated that "[w]e do not go so far as the Court of Appeals' opinion in *Falcon Coal* .... limiting recovery under products liability theory to damage or destruction of property 'other' than the product itself." Thus, it appears on first glance that Kentucky would reject the economic loss doctrine. However, in *Real Estate Marketing*, the Supreme Court addressed whether homeowners who were not

the original purchasers could assert a viable negligence claim against a homebuilder for structural defects. This case can be distinguished from cases, such as the present one, "that traditionally merit the application of the economic loss rule, in that it does not involve a transaction between a commercial buyer and seller." *Thomasson*, 902 F.Supp. at 138 n. 2. In the present case, Gooch and DuPont are commercial buyers and commercial sellers. KRS 355.2–103.

bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses." *Id.* at 615. The court noted that the plaintiffs asserted damage to property other than the goods purchased but notwithstanding such damages to the plaintiffs' cows, the damages sought were for economic losses. *Id.* at 619. The court reasoned

> [i]n many cases, failure of the product to perform as expected will necessarily cause damage to other property; such damage is often not beyond the contemplation of the parties to the agreement. Damage to property, where it is the result of a commercial transaction otherwise within the ambit of the UCC, should not preclude application of the economic loss doctrine where such property damage necessarily results from the delivery of a product of poor quality.

*Id.* at 620. Thus, because the plaintiffs lawsuit sought recovery for mainly commercial losses, the "economic loss doctrine" barred their tort claims as their losses could be better recovered under the U.C.C.

■ In the present case, Gooch asserts claims that arose from his failed expectation of the Accent herbicide. Gooch seeks damages to recover for the economic losses resulting from the failed commercial expectation that Accent would control rhizome johnson grass without damage to his corn crop. While· damage did incidently occur to his corn crop, Gooch's strict liability and negligence claims essentially seek recovery for the economic losses suffered as a result of a defect in the Accent. The Court believes that Kentucky's highest court would apply the "economic loss doctrine" to preclude such a tort based theory of recovery for the losses associated with reduced crop yields due to a defective herbicide. In such a situation, the remedy provisions of the U.C.C. and contract law

which are designed to place a party in the position he or she would have been in had the contract been performed[6] provide a better form of recovery for these types of losses. *See East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 872–874, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) (applying the economic loss doctrine to tort claims for damage to ship's turbines). As the Sixth Circuit held, a plaintiff who seeks to recover damages resulting from a failed commercial expectation which caused only economic losses cannot state a viable claim under tort law. *Bailey,* 27 F.3d at 191; *see also Maynard Coop. Co. v. Zeneca, Inc.,* 143 F.3d 1099, 1102–03 (8th Cir.1998) (holding "economic loss doctrine" barred plaintiffs claims based on the negligent representation made by herbicide manufacturer that grass could be replanted seven days after application because claim sought solely to recover economic losses). Such recovery is better left to the warranty law of contracts and other provisions of the U.C.C.

The Court finds unpersuasive Gooch's arguments that the Kentucky Supreme Court would not adopt the economic loss doctrine because of recent decisions which allow an injured plaintiff to state a products liability claim based upon theories of either strict liability, negligence or breach of warranty. The cases cited by Gooch[7] are distinguishable because in each the plaintiff suffered personal injury from a defective product; they were not seeking solely economic losses which resulted from a failed expectation arising from a commercial transaction. The Court finds, as a matter of law, that the economic loss doctrine bars Gooch's strict liability and negligence claims for a defective product. Therefore, summary judgment is appropriate for these claims. In light of this decision, the Court need not consider DuPont's

---

**6.** KRS § 355.1–106(1). On the other hand, tort damages are designed to place a plaintiff in the position he or she was in before the injury occurred. *Hughett v. Caldwell County,* Ky, 313 Ky. 85, 230 S.W.2d 92, 96 (1950); *see also East River,* 476 U.S. at 873 & n. 9, 106

S.Ct. 2295 (discussing the difference between contract damages and tort damages).

**7.** Gooch cites *Monsanto Co. v. Reed,* Ky., 950 S.W.2d 811(1997); *Clark v. Hauck Mfg. Co.,* Ky., 910 S.W.2d 247 (1995).

argument that FIFRA preempts these tort claims or that the evidence fails to support Gooch's tort claims.

For the foregoing reasons, IT IS HEREBY ORDERED that

1) the Defendant's Motion for Summary Judgment [DN 45] is **GRANTED.**

**THIS IS A FINAL AND APPEALABLE ORDER AND THERE IS NO JUST CAUSE FOR DELAY.**